**Maryam GHADESSI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 85–7329.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 17, 1986.*

Decided Aug. 19, 1986.

John M. Garrisi, Los Angeles, Cal., for petitioner.

Allen W. Hausman, Asst. Director Office of Immigration Litigation Civil Div., and Stewart Deutsch, Dept. of Justice, Washington, D.C., for respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a) and Ninth Circuit Rule 3(f).

Before POOLE and BEEZER, Circuit Judges, and JAMESON, District Judge **

BEEZER, Circuit Judge:

█ Maryam Ghadessi petitions for review of the decision of the Board of Immigration Appeals ("BIA") denying her motion to reopen deportation proceedings to apply for asylum as a refugee under section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a). The BIA denied Ghadessi's motion on the ground that she failed to establish a *prima facie* case for relief. We conclude that Ghadessi has stated a *prima facie* case of a well-founded fear of persecution and thus we remand this matter to the BIA to reopen deportation proceedings for the presentation of evidence on her eligibility for asylum.[1]

# I

## Background

Ghadessi, a citizen of Iran, first entered the United States in 1978 as a non-immigrant student. When her student visa expired, the Immigration and Naturalization Service ("INS") instituted deportation proceedings. In 1980, Ghadessi was found deportable by an immigration judge, and this decision was affirmed by the BIA and this court.

In 1984, Ghadessi filed a motion to reopen deportation proceedings pursuant to 8 C.F.R. § 3.2 to apply for asylum as a refugee. She alleges that since her deportation proceedings, she has been active in an anti-Khomeini organization and would be persecuted for such conduct upon her return to Iran. The BIA found that she had not established the *prima facie* showing necessary to reopen proceedings.

# II

## Standard of Review

It is generally stated that the BIA's denial of a petition to reopen deportation proceedings to apply for asylum is reviewed by this court for an abuse of discretion. *Hernandez-Ortiz v. INS*, 777 F.2d 509, 513 (9th Cir.1985); *cf. INS v. Rios-Pineda*, — U.S. —, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985) (abuse of discretion standard applies to motion to reopen to petition for suspension of deportation). However, when the BIA restricts its decision, as here, to whether the alien has established a *prima facie* case, this is the only basis for the decision that we review. *Hernandez-Ortiz*, 777 F.2d at 517; *see Larimi v. INS*, 782 F.2d 1494, 1496 (9th Cir.1986). The determination of whether an alien has established a *prima facie* case that she is a refugee, i.e., has a well-founded fear of persecution, is nondiscretionary.[2] *See Hernandez-Ortiz*, 777 F.2d at 518; *cf. Aviles-Torres v. INS*, 790 F.2d 1433, 1436 (9th Cir.1986) (BIA has no discretion to deny motion to reopen where prima facie case for prohibition of deportation is established).

** The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. "All requests for political asylum are also considered applications for withholding of deportation pursuant to 8 U.S.C. § 1253(h)." *Aviles-Torres v. INS*, 790 F.2d 1433, 1435 (9th Cir. 1986); *see also* 8 C.F.R. § 208.3(b). As we hold that Ghadessi has established a prima facie case for asylum mandating reopening of proceedings, she should also be allowed to present evidence in support of a claim for prohibition of deportation.

2. If we were reviewing a BIA decision denying asylum after a deportation hearing, we would apply a two-part standard of review. First, we would evaluate whether there is substantial evidence of a well-founded fear of persecution, i.e., whether the alien is statutorily eligible for asylum. Second, we would determine whether the BIA abused its discretion by its ultimate decision denying asylum. *Garcia-Ramos v. INS*, 775 F.2d 1370, 1373 (9th Cir.1985).

However, in a motion to reopen, the petitioner need only establish a *prima facie* showing. Although this is analogous in some ways to the statutory eligibility showing, there is no evidence in the record to review and we must accept as true the factual statements contained in the alien's affidavit. Consequently, our review is limited to an evaluation of whether the BIA's determination on the *prima facie* case showing was correct.

Even where an alien qualifies as a refugee by showing a well-founded fear of persecution, the BIA may exercise some discretion in determining whether to grant asylum. *Hernandez-Ortiz,* 777 F.2d at 518; *see Mahini v. INS,* 779 F.2d 1419, 1421 (9th Cir.1986) (adverse factor of narcotics conviction permits discretionary denial of asylum). It is also true that, in a review of a motion to reopen, the BIA may exercise discretionary authority to avoid the question of whether a *prima facie* case of statutory eligibility is established and instead proceed to rule on the merits of the alien's entitlement to a favorable exercise of discretion. *See Hernandez-Ortiz,* 777 F.2d at 517–18. However, the BIA clearly did not exercise any type of discretionary authority in this case. Its decision was squarely predicated on a finding that Ghadessi failed to establish a *prima facie* case. Thus, we need not consider the nature or extent of the BIA's discretion to deny a motion to reopen deportation proceedings in order to apply for asylum.

Consequently, our review is limited to considering whether the BIA's "determination concerning the prima facie case is *correct.*" *See Larimi,* 782 F.2d at 1496 (emphasis added).

### III

### Prima Facie Case Standard

In support of her application, Ghadessi presented an affidavit in which she described her involvement in an anti-Khomeini organization, stated she had organized and participated in three public anti-Khomeini demonstrations, and said she had given interviews on conditions in Iran. She also alleged that the Revolutionary Guards had detained her parents in Iran and interrogated them as to her whereabouts and whether she was involved in anti-Khomeini activities. In addition, she submitted an advisory opinion letter from the Department of State's Bureau of Human Rights and Humanitarian Affairs, which stated that if Ghadessi's statements were true, she had established a well-founded fear of persecution.[3]

A *prima facie* case for relief as a refugee entitled to asylum under section 208(a) is established when an alien presents "affidavits or other evidentiary material," 8 C.F.R. § 103.5, which, if true, demonstrate that she has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Hernandez-Ortiz,* 777 F.2d at 513.

Because the BIA was acting on Ghadessi's motion to reopen, it was required to accept as true the factual statements contained in her affidavit. *Id.* at 514; *Maroufi v. INS,* 772 F.2d 597, 600 (9th Cir.1985). As motions to reopen are decided without a factual hearing, the Board is unable to make credibility determinations at this stage of the proceedings. *Hernandez-Ortiz,* 777 F.2d at 516. Unless the alleged facts are "inherently unbelievable," corroboration of the petitioner's affidavit is not necessary to establish a *prima facie* case.[4] *Id.* at 514.

The BIA simply failed to appreciate the limited screening nature of the motion to reopen review. There is every indication from the text of its decision that the BIA's conclusion that Ghadessi had not established a *prima facie* case was due solely to

---

3. Ghadessi also presented a letter from an acquaintance, Dr. Ahmad Azadeh, written on the stationery of an anti-Khomeini organization, which attested to her involvement in the organization's activities and stated that her life would be endangered if she were returned to Iran. The BIA properly noted that this letter was not entitled to probative weight. The letter writer's qualifications were not stated, and no factual basis was indicated for his assertion that she would be persecuted in Iran.

4. As we noted in *Hernandez-Ortiz,* 777 F.2d at 514 n. 5, direct corroborative evidence of a substantive fear of persecution is not necessary even in the full hearing on the merits of a petition for asylum because "the imposition of such a requirement would result in the deportation of many people whose lives are genuinely in jeopardy." *Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1285 (9th Cir.1984). This court has recognized the impracticability of requiring refugees fleeing their homeland to present evidence other than their own credible testimony.

the Board's weighing of the quality, rather than the sufficiency, of her evidence. The BIA's short decision emphasized that Ghadessi had not presented "any impartial, objective evidence" nor "any corroborating material independent of her own statements or those of family members or close friends."

In fact, although the BIA correctly noted that the State Department opinion was not binding upon it, the BIA never contradicted the opinion letter's statement that Ghadessi had established a *prima facie* case of a well-founded fear of persecution if her allegations were regarded as true. Rather the BIA strongly indicated that it found her allegations to be *un*true, or at least insufficiently corroborated by other evidence; a finding which the BIA is prohibited from making in considering a motion to reopen.

Furthermore, the BIA applied the wrong standard in reviewing Ghadessi's motion to reopen.[5] The BIA required Ghadessi to establish a *prima facie* case of "a realistic likelihood of persecution" were she to return to Iran. By phrasing the test in terms of "likelihood" of persecution, the BIA was requiring Ghadessi to demonstrate the "probability" of persecution. *See Garcia-Ramos*, 775 F.2d at 1373 (withholding of deportation statute requires showing of a *"probability"* or *"likelihood"* of persecution).

This "probability" or "likelihood" standard has been expressly rejected by this court in considering petitions for asylum. The "well-founded fear" standard applied to claims for asylum under section 208(a) of the Refugee Act, 8 U.S.C. § 1158(a), is "more generous" than the "clear probability of persecution" standard applied to petitions for mandatory withholding of deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C.

§ 1253(h). *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1282 (9th Cir.1984).

The "well-founded fear" standard applied to claims for asylum includes a subjective and an objective component. *Diaz-Escobar v. INS*, 782 F.2d 1488, 1492 (9th Cir.1986); *Hernandez-Ortiz*, 777 F.2d at 513. An applicant satisfies the subjective component if she shows that her fear is genuine. *Diaz-Escobar*, 782 F.2d at 1492. The objective component is satisfied if persecution is a "reasonable possibility," *Hernandez-Ortiz*, 777 F.2d at 513; *Garcia-Ramos*, 775 F.2d at 1374. There is no requirement of a showing of a "likelihood" of persecution.

Finally, the BIA erred by simply noting the absence of independent corroborating evidence and failing to give *any* consideration to the substance of Ghadessi's allegations in her affidavit. On a motion to reopen, the BIA must indicate both individualized and cumulative consideration of all of the relevant evidence presented in support of the motion. The BIA decision is devoid of any such analysis.

## IV

### Merits of the Prima Facie Case Analysis

Applying the proper standard and accepting Ghadessi's affidavit as true, Ghadessi has established a *prima facie* showing of a well-founded fear of persecution. She has presented *"specific* facts that give rise to an inference that the applicant has been or has good reason to fear that he or she will be singled out for persecution." *See Del Valle v. INS*, 776 F.2d 1407, 1411 (9th Cir.1985).

In her affidavit, Ghadessi has described her extensive and active involvement in a public campaign to protest and discredit the Khomeini regime in Iran.[6] Although

---

**5.** The argument that Ghadessi failed to preserve this issue on appeal is without merit. Although Ghadessi's brief did not expressly attack the evidentiary standard applied by the BIA, she did challenge the BIA's decision that she had failed to establish a *prima facie* case for asylum. We cannot review the BIA's ultimate decision denying the existence of a *prima facie* case of a

well-founded fear of persecution without also considering whether the standard applied to evaluate Ghadessi's petition was the correct one.

**6.** The recent case of *Larimi v. INS*, 782 F.2d 1494 (9th Cir.1986), although superficially similar to the instant case, is in fact distinguishable. In *Larimi*, an Iranian national, who became

the Immigration and Naturalization Service (INS) asserts that no evidence was submitted showing her activities had come to the attention of the Iranian government, she had produced evidence from which an inference can be drawn that Iranian government authorities might be aware of her anti-Khomeini activities.

In *Garcia-Ramos,* 775 F.2d at 1373, we noted that the petitioner had not presented *any* evidence that the El Salvadoran government was aware of his political activities. However, we found that, owing to his extensive anti-government activities, he was statutorily eligible for asylum because he *might* have come to the attention of the government. *Id.* at 1374.

The affidavit evidence presented by Ghadessi is much stronger than that of the petitioner in *Garcia-Ramos.* Her allegation that her parents were detained and interrogated by Iranian authorities on three occasions regarding her activities indicates that her political beliefs may have come to the attention of the Iranian government. The fact that her parents have been harassed and actually detained due to the government's apparent suspicion of her dissident activities lends "considerable strength" to her claim that she fears persecution. *See id.* (evidence of government harassment of petitioner or family "[o]bviously" would "lend considerable strength" to asylum claim).

The INS dismisses these interrogation sessions, saying that the questioning of her parents by Iranian authorities merely evidenced government curiousity as to her whereabouts and her delay in returning to Iran. This is belied by the record.

Ghadessi's affidavit states the interrogation of her parents concerned "my whereabouts in the United States and whether they *were aware of my involvement in Anti-Khomeini organizations.* The revolutionary guards have told them that I should return to Iran to clear my name and undergo questioning." (Emphasis added.) It is significant that Ghadessi does not state that her parents were interrogated as to *whether* she was involved in anti-Khomeini organizations, but whether they were *"aware"* of her involvement in such activities. This statement at least implies that the government may know of her activities. Most importantly, the suggestion by the Revolutionary Guards that she needs to "clear her name" can only be interpreted as evidence that the Iranian government suspects her lack of loyalty to the current regime.

Furthermore, Ghadessi submitted evidence giving rise to a reasonable fear on Ghadessi's part that the Khomeini government might act upon its suspicions of her political opposition. She described the repressive conditions in Iran, which, although not sufficient in itself to demonstrate individualized fear of persecution, is a factor to be considered. *See Bolanos-Hernandez,* 767 F.2d at 1283 n. 11. In particular, she noted the unfavorable attitude toward female activists in that radical Islamic environment.

Most importantly, the fact her own parents have been detained by the Revolutionary Guards for interrogation regarding her

---

involved in anti-Khomeini political activities subsequent to his initial deportation proceedings, subsequently sought to reopen proceedings to apply for asylum and withholding of deportation. We affirmed the BIA's denial of the motion to reopen. *Id.* at 1497.

The evidence alleged in support of the prima facie case by Ghadessi is far stronger than that submitted in *Larimi.* In *Larimi,* the petitioner had only a casual connection with an anti-Khomeini organization in the Bay Area and he offered only speculation that such a connection would result in his persecution if returned to Iran. *Id.* at 1497. Ghadessi, by contrast, has

described extensive and active involvement in anti-Khomeini activities, not only participating in demonstrations but organizing them, as well as giving public interviews to criticize the Iranian regime. More importantly, Ghadessi stated that her parents had been interrogated by the Revolutionary Guards concerning her involvement in anti-Khomeini activities, with the Guards' stating that she needed to clear her name. Finally, the State Department advisory opinion confirmed that she had shown a well-founded fear of persecution. None of these important factors were present in the *Larimi* case.

activities, and that the government believes it necessary for her to "clear her name" lays a strong foundation for a reasonable fear of persecution. Her parents present in Iran have warned her not to return as she would encounter trouble.

Lastly, the Department of State's advisory opinion, presumably based on the Department's knowledge of the Iranian situation, stated that she has established a well-founded fear of persecution, assuming her allegations are true. Although this opinion is not binding upon the BIA, it is an important evidentiary factor to be weighed. *See Zavala-Bonilla v. INS*, 730 F.2d 562, 567 (9th Cir.1984) (State Department's advisory opinion, stating that if petitioner's allegations were true, she had a well-founded fear of persecution, was entitled to deference).

This evidence may or may not be sufficient to establish Ghadessi's eligibility for asylum after a full hearing on the merits, but it is sufficient to establish a *prima facie* case of a well-founded fear of persecution in order to obtain a reopening of deportation proceedings.

### Conclusion

This case is remanded to the BIA to conduct a deportation hearing allowing the presentation of evidence on Ghadessi's statutory eligibility for asylum and her suitability for a favorable exercise of discretion by the BIA.

PETITION GRANTED.

JAMESON, District Judge, concurring.

I concur in the conclusion that the evidence was sufficient to establish a *prima facie* case of a well founded fear of persecution and in most of Judge Beezer's well considered opinion. I have some reservation, however, with respect to the holding that the determination of whether an alien has established a *prima facie* case is nondiscretionary.

I recognize that there is some confusion in the decisions with respect to the standard of abuse of discretion. As Judge Beezer has noted, in *Larimi v. INS*, 782 F.2d 1494, 1496, the court held that review is limited to considering whether the BIA's "determination concerning the prima facie case is correct." On the other hand, the court also noted in *Larimi* that the BIA's decision as to whether Larimi had established a *prima facie* case is reviewed for an "abuse of discretion," citing *Maroufi v. INS*, 772 F.2d 597, 599, and *Vasquez v. INS*, 767 F.2d 598, 601.

The case most nearly in point factually is the recent case of *Aviles-Torres v. I.N.S.*, 790 F.2d 1433, 1437 (9th Cir.1986), where the court said:

> The Board also improperly concluded that Aviles-Torres did not establish prima facie eligibility for asylum. Because he presented a prima facie case for withholding of deportation, he also satisfied the more generous "well-founded fear" standard for asylum. *See Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1288 (9th Cir.1984). Although the Board has broad discretion in considering petitions to reopen for discretionary relief, *see INS v. Rios-Pineda*, 105 S.Ct. at 2101, the Board in this case failed to articulate any legitimate concerns that would justify an exercise of discretion unfavorable to the petitioner. We have held that it should do so. *See Hernandez-Ortiz*, 777 F.2d at 518–19. Moreover, no factors similar to those which prompted denial of the petition in *Rios-Pineda* appear in the record in this case.
>
> We hold that the petitioner should have the opportunity fully to establish his case and to receive thoughtful consideration of it. The BIA's denial of reopening in view of the evidence presented was an abuse of discretion.

As in *Aviles-Torres*, the BIA's denial of reopening in this case, in view of the evidence presented, was an abuse of discretion. The case should be remanded to reopen deportation proceedings for presentation of evidence on Ghadessi's eligibility for asylum.

POOLE, Circuit Judge, dissenting:

I agree with Judge Jameson's view concerning this court's standard of review

when the BIA denies an alien's petition to reopen deportation proceedings. However, because I believe that my colleagues incorrectly analyze the merits of Ghadessi's *prima facie* case, I must respectfully dissent.

I.

Preliminarily, I note that a majority of the panel agrees that we must review for an abuse of discretion the BIA's decision not to reopen Ghadessi's deportation proceedings. As an appellate court, the resolution of what standard of review to apply to a given issue is a fundamental prerequisite to any further analysis of the case. Because of this importance, I offer my own views to support the conclusion that we must review for abuse of discretion the BIA's denial of Ghadessi's motion to reopen on the ground that she had failed to establish a *prima facie* case for asylum.

Motions to reopen deportation proceedings are not expressly provided for by statute, but are allowed pursuant to administrative regulations. *INS v. Jong Ha Wang,* 450 U.S. 139, 140–41, 101 S.Ct. 1027, 1029–30, 67 L.Ed.2d 123 (1981) (per curiam). The regulations are construed so that the granting of a motion to reopen deportation proceedings is discretionary with the BIA. *See INS v. Rios-Pineda,* 471 U.S. 444, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985); *INS v. Phinpathya,* 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 588 n. 6, 78 L.Ed.2d 401 (1984). This court reviews the BIA's decision denying reopening to see whether the BIA abused its discretion. *Aviles-Torres v. INS,* 790 F.2d 1433, 1435 (9th Cir.1986).

Judge Beezer, however, believes that when the BIA denies an alien's motion to reopen deportation proceedings to apply for asylum on the basis that the alien has failed to establish a *prima facie* case, then this standard vanishes and is replaced by a new standard whereby this court reviews the BIA's decision to determine whether that decision is "correct." Opinion at 806.

Besides running contrary to this court's decision in *Larimi v. INS,* 782 F.2d 1494, 1496 (9th Cir.1986) (when the BIA restricts its decision to whether the alien had established a *prima facie* case, "[i]t is this action that we must review for an abuse of discretion."), this position strays from the Supreme Court's reasoning in this area. As the Court has cautioned, reviewing courts must not improvidently encroach on the authority which the immigration statutes have conferred on the Attorney General and his delegates. *See Jong Ha Wang,* 450 U.S. at 144, 101 S.Ct. at 1031. As previously noted, the granting of a motion to reopen deportation proceedings clearly is discretionary with the BIA. *See Rios-Pineda,* 105 S.Ct. at 2102. Whether the basis for the BIA's decision is the failure to establish a *prima facie* case or the further exercise of the BIA's discretion beyond the *prima facie* case, the BIA is still performing the function which by statute it is authorized to perform.

While this court does review the BIA's decision, our review is limited to whether the BIA abused its discretion in denying reopening. The BIA abuses its discretion if it acts arbitrarily, irrationally, or contrary to law. *Israel v. INS,* 785 F.2d 738, 740 (9th Cir.1986); *see Aviles-Torres,* 790 F.2d at 1435. The Supreme Court has made clear that this standard is to be followed by the federal courts and that "it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates *de novo* appellate review." *Rios-Pineda,* 105 S.Ct. at 2103; *see also Jong Ha Wang,* 450 U.S. at 144, 101 S.Ct. at 1031 (definition of standard for suspension of deportation committed to Attorney General and his delegates "and their construction *and application* of th[ese] standard[s] should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute.") (emphasis added). Heeding this admonition, I believe that we must examine the BIA's conclusion that Ghadessi failed to establish a *prima facie* case of asylum to see if that conclusion was arbitrary, irrational or contrary to law. Therefore, I agree with Judge Jameson's conclusion regarding this court's standard of review,

although I disagree with his analysis of the facts under this standard.

## II.

Even reviewing Ghadessi's claim *de novo,* she has failed to present enough evidence to establish a *prima facie* case for asylum, namely that she has a well-founded fear of persecution.[1] Ghadessi must present objective evidence demonstrating that persecution is a "reasonable possibility" should she be forced to return to Iran.

To support her claim, Ghadessi submitted a two-page affidavit. In it Ghadessi states that due to her public political activities in this country, "I am sure I have been placed on the Revolutionary Committee 'Black List' and will be persecuted if I am forced to return to Iran." Ghadessi, however, provides only one concrete example of her public activities. On October 27, 1984, she helped lead a demonstration in front of the Netherlands Embassy in San Francisco. Although the I.S.F. also demonstrated earlier in front of the San Francisco office of Melli Bank, Ghadessi's affidavit does not state that she participated in that demonstration.

Even if one stretches Ghadessi's affidavit so as to include her participation in the Melli Bank demonstration, there emerges only two instances of public political activity. From these two instances and Ghadessi's generalized characterization of her activities as being "several" and "frequent"

we are asked to draw the inference that she was so spotlighted that it would be reasonable to conclude that the Iranian government was thereby made aware of her anti-Khomeini sentiments. I do not believe there is any basis for such an inference from the dearth of specific information provided by Ghadessi, especially in light of the fact that her alleged activities all occurred in the midst of a crowd and in the United States. *Cf., Garcia-Ramos v. INS,* 775 F.2d 1370 (9th Cir.1985) (political activities occurred *in El Salvador*).

Ghadessi's strongest evidence suggesting a possibility of persecution concerns the questioning of Ghadessi's parents by Iranian authorities. Because this evidence is so important, I quote it in full from Ghadessi's affidavit:

> To confirm my fears that the Islamic authorities were aware of my political activities, my parents have been questioned on three separate occassions [sic] on my whereabouts in the United States and whether they were aware of my involvement in Anti-Khomeini organizations. The Revolutionary Guards have told them that I should return to Iran to clear my name and undergo questioning.

The majority extrapolates from the fact that the Iranian officials inquired *whether* Ghadessi was involved in any anti-Khomeini activities and their suggestion—accompanied by no threats—that Ghadessi should return to Iran to clear her name and undergo questioning, a certainty that this "can only be interpreted as evidence that

---

**1.** I disagree with the majority that the BIA in its opinion applied the wrong standard in reviewing Ghadessi's motion to reopen. The BIA appeared to recognize that there is a difference between the "clear probability" standard for prohibition of deportation and the "well-founded fear" standard for claims of asylum. Instead of requiring a clear probability of persecution, the BIA recognized a lesser standard of "realistic likelihood." While the BIA did not mouth the specific words used by this court, its decision clearly evidenced and applied a more lenient standard to Ghadessi's claim. *See Chatila v. INS,* 770 F.2d 786, 790 (9th Cir.1985) (BIA recognized difference between two forms of relief when it stated that its conclusion as to asylum claim would be the same "whether we apply a standard of 'clear probability,' 'good

reason,' or 'realistic likelihood' "). Because I conclude that substantial evidence supports the BIA's conclusion that Ghadessi did not establish a well-founded fear of persecution, I would affirm the BIA's decision.

Even were I to agree with the majority that the BIA applied an incorrect standard to Ghadessi's petition, I could not agree that Ghadessi is entitled to reopening of her deportation proceedings. When this court determines that the BIA has applied too strict a standard when reviewing an alien's asylum claim, the proper course is not to determine the case *de novo* but to remand to the BIA for it to reconsider the alien's petition under the correct standard. *See Martinez-Sanchez v. INS,* 794 F.2d 1396, 1400 (9th Cir.1986); *Maroufi v. INS,* 772 F.2d 597, 601 (9th Cir.1985).

the Iranian government suspects her lack of loyalty to the current regime." Opinion at 808. I strongly disagree with such an interpretation. First, Ghadessi does not indicate the time frame in which these encounters occurred, i.e., whether all of some of the encounters occurred prior to 1980 when Ghadessi first joined the I.S.F. or after her affiliation with that group. Second, the Revolutionary Guards' questions concerning Ghadessi suggest that the Iranian government is trying to find out about Ghadessi's whereabouts and activities. It is significant that nowhere in Ghadessi's affidavit is it stated, nor can it be inferred from what is set forth, that the government had information about Ghadessi's I.S.F. activities and was merely confronting her parents with the hope that they would confirm such reports. No pressure appears to have been applied by the Guards to Ghadessi's parents.[2] Moreover, the fact that the Guards believe that Ghadessi should return to Iran to "clear her name" may just as easily stem from the fact that she has been domiciled in a country considered hostile by the Iranian government as from any concrete information concerning her lack of loyalty.

But even so, the majority reaches its conclusion only by drawing arguable inferences from the meager evidence presented. This ignores the proper allocation of functions between this court and the BIA. Surely, the BIA's conclusion to the contrary was within the realm of reason and was not arbitrary, irrational or contrary to law. The majority may prefer its own result of inference-drawing; but Congress and the Supreme Court have placed that function in the hands of the BIA.

Ghadessi's claim fails because it is not sufficiently specific.[3] She had the burden of establishing a *prima facie* case that she has a *well-founded* fear of persecution. The BIA found her evidence too speculative to sustain this burden. That was that body's assigned role. The majority's holding usurps that role. Accordingly, the BIA did not abuse the discretion vested in it when it denied the petition, and I would affirm its decision.

---

2. In her affidavit, Ghadessi claims, "My parents fear that I will be in trouble if I return to Iran." This warning is not entitled to probative weight. The basis for such a fear is not explained, nor does the affidavit explain what type or degree of trouble Ghadessi's parents were talking about.

3. Moreover, the fact that the Department of State's Bureau of Human Rights and Humanitarian Affairs (BHRHA) issued a favorable opinion letter does not alter this conclusion. Such an advisory opinion is not binding on the BIA

but is merely a factor to be considered by it. *Matter of Exilus,* 18 I & N Dec. 276, 279 (BIA 1982). Furthermore, this advisory is conditional; if the allegations were factually sustained, a *prima facie* case of well-founded fear would be presented. That opinion does not conclude that such facts were established. The BIA did consider the State Department's advisory opinion in making its determination, but found the supporting foundation lacking.