**Assibi ABUDU, Petitioner-Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE,
Respondent-Appellee.**

**Nos. 84–7686, 86–7075.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1986.

Decided Oct. 14, 1986.

Dorthy A. Harper, Popkin, Shamir & Golan, Los Angeles, Cal., for petitioner-appellant.

Marshall T. Golding, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before ANDERSON, PREGERSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Petitioner, Dr. Assibi L. Abudu, a native and citizen of Ghana, petitions for review of two decisions of the Board of Immigration Appeals (BIA). First, the BIA held that because of a California conviction of an unlawful attempt to obtain a controlled substance (demerol) by fraud under Cal. Health & Safety Code § 11173(a), Dr. Abudu is deportable under Immigration and Nationality Act § 241(a)(11), 8 U.S.C. § 1251(a)(11) (an alien shall be deported who has been convicted of a violation of law relating to the illicit possession of a narcotic drug). We affirm the Board's holding that Dr. Abudu is deportable. Second, the BIA denied reopening and thus precluded Dr. Abudu from pursuing his prohibition against deportation and asylum claims. We reverse the BIA on this issue and remand for an evidentiary hearing.

FACTS

Dr. Assibi L. Abudu is a forty-one year old licensed physician, a native and citizen of Ghana, married to a United States citizen. He entered this country on a student visa on July 27, 1973, with authority to remain until February 6, 1976. On April 7, 1981, Dr. Abudu pleaded guilty in state court to unlawfully obtaining or attempting to obtain a controlled substance (demerol) by fraud. See Cal.Health and Safety Code § 11369. He was given a suspended sentence of one year's imprisonment and placed on probation for three years. On the basis of this conviction, the INS issued an order to show cause on August 7, 1981, charging that he was deportable under Immigration and Nationality Act § 241(a)(11), 8 U.S.C. § 1251(a)(11).

Deportation proceedings commenced November 3, 1981. At the November 10, 1981 proceeding Dr. Abudu expressed an intent to file an application for asylum and prohibition against deportation. On January 11, 1982, Dr. Abudu denied deportability on the narcotics conviction, but conceded deportability on an overstay of visa charge. Dr. Abudu requested adjustment of status based on his marriage to a United States citizen. On April 29, 1982, counsel stated he would not file for asylum and prohibition against deportation. The final deportation proceeding was conducted July 1, 1982.

On July 1, 1982, the immigration judge decided that Dr. Abudu's conviction, being on bifurcated charges, obtaining and attempting to obtain a controlled substance, must be construed as a conviction on the lesser attempt charge. The judge determined that obtaining a controlled substance is a deportable offense under Immigration and Nationality Act § 241(a)(11), and that an attempt to commit a deportable offense renders an alien equally deportable. Thus, he concluded, the conviction which rendered Dr. Abudu deportable under Immigration and Nationality Act § 241(a)(11) created a non-waivable ground of excludability under Immigration and Nationality Act § 212(a)(23), 8 U.S.C. 1182(a)(23), and precluded adjustment of status. On appeal, the Board affirmed the decision of the immigration judge. In addition, the Board rejected Dr. Abudu's argument that the order to show cause was defective, finding that the order reasonably informed him of his alleged violation and the ground for his deportability with sufficient precision to allow him properly to defend himself.

On February 1, 1985, while the petition to review the original deportation order was pending before us, Dr. Abudu filed a motion to reopen to enable him to apply for asylum and prohibition against deportation. In the affidavits and materials that were filed in support of his motion, the following facts are alleged to be true: Dr. Abudu is closely associated with at least two exiled enemies of the present Ghana regime, a military dictatorship headed by Flight Lt. Jerry Rawlings. Rawlings initially came to power on June 4, 1979 and was subsequently arrested by the Limann government. On December 31, 1981, Rawlings regained power in a military coup. Dr. Abudu's brother is an economist who was connected with the now deposed Achaenpny government and also with the now deposed Limann government. In Ghana, Dr. Abudu's brother's house was surrounded by govern-

ment troops, but he escaped and now lives in hiding. Dr. Abudu's lifelong friend is Lt. Col. Joshua Hamidu, who was declared by Ghana's present dictator Rawlings to be the number one enemy of the government. In May and June of 1983 there were two coup attempts which involved dissidents from abroad. In 1984 Dr. Abudu was visited in the United States by a highly placed Rawlings government official, who attempted to acquire knowledge about the whereabouts of Rawlings' enemies and to persuade Dr. Abudu to return to Ghana.

The Board denied reopening on two grounds. First, it found that the considerations upon which Dr. Abudu relied in making his asylum and prohibition against deportation claims were in existence at the time he made the determination not to apply for such relief. Second, the Board concluded that Dr. Abudu's "mere assertions of possible threats are lacking in specific, objective detail and do not constitute a *prima facie* showing of eligibility for either asylum or prohibition against deportation."

## DISCUSSION

### I. DEPORTATION ORDER

The Board's determination of deportability must be sustained if it is supported by "reasonable, substantial and probative evidence." *Woodby v. INS*, 385 U.S. 276, 281, 87 S.Ct. 483, 485, 17 L.Ed.2d 362 (1966). The interpretation of a statute is a question of law subject to *de novo* review. *Southeast Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir.1983). A reviewing court will generally defer to an agency's interpretation if it is consistent with congressional intent and supported by substantial evidence. *Oregon Dept. of Human Resources v. Dept. of Health and Human Services*, 727 F.2d 1411, 1413 (9th Cir.1983).

Dr. Abudu contends he was denied due process because the order to show cause was defective. He further contends his state conviction for attempting to obtain a controlled substance by fraud does not fall within the immigration statute at all because the conviction does not relate to illicit possession. He also claims the conviction is more akin to a use violation and that a use violation does not constitute a deportable offense.

■ A function of the order to show cause is to advise an alien of his alleged violation with sufficient precision to allow him to defend himself, *Matter of Chen and Hasan*, 15 INS 80. As the Board found, the order to show cause, which cites the correct provision of the statute, Immigration and Nationality Act § 241(a)(11), 8 U.S.C. § 1251(a)(11), reasonably informed Dr. Abudu of his alleged violation and the ground for deportability. Despite the failure to include the precise phrase of the immigration statute which relates to illicit possession of a narcotic drug and the inclusion instead of a closely related but inapplicable clause, the citation to the appropriate section of the statute and the reference to the offense was sufficient to allow Dr. Abudu properly to defend himself.

■ Section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251 renders deportable and § 212(a)(23) of that Act makes ineligible for adjustment of status, any alien who is convicted of a violation of "any law ... relating to the illicit possession of ... narcotic drugs." That provision requires that a conviction relate to illicit possession. A conviction for attempted illicit possession renders an alien as deportable as does a conviction for actual illicit possession. *See Bronsztejn v. INS*, 526 F.2d 1290, 1291 (2d Cir.1975). We conclude also that unlawfully *obtaining* narcotics falls within the prohibition against unlawfully *possessing* such drugs. Thus, Dr. Abudu's conviction for violation of section 11173(a) of the Cal.Health and Safety Code, attempting to obtain demerol (a narcotic drug), falls within the immigration statute and constitutes a deportable offense.

### II. ASYLUM AND PROHIBITION AGAINST DEPORTATION

#### A. *Standard of Review*

■ The Supreme Court recently reiterated that the Board has wide discretion to deny

a petition by an alien seeking reopening. Such denials are reviewed for abuse of discretion. *See INS v. Rios-Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 2101, 85 L.Ed.2d 452 (1985). Here, however, the sole issue is whether petitioner presented a *prima facie* case for reopening. "When the Board restricts its decision [refusing to reopen] to whether the alien has established a *prima facie* case it is only this basis for its decision that we review." *Hernandez-Ortiz v. INS*, 777 F.2d 509, 517 (9th Cir. 1985). *See also Federal Power Commission v. Texaco Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974) ("[A]n agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.' ") (citation omitted).

Our obligation as a reviewing court is to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Recently, an *en banc* panel of this court held that "the Board's refusal to grant reopening in the exercise of its administrative discretion [is to] be reviewed independently of the correctness of the Board's ruling on the question of statutory eligibility." *Gonzalez Batoon v. INS*, 791 F.2d 681, 684 (9th Cir. 1986). Here, we are not faced with the exercise of the Board's *administrative discretion;* rather, the issue on this appeal is whether the Board's decision to refuse to reopen on the ground that petitioner's application and supporting material did not set forth a prima facie case for substantive relief must be reversed as not in accordance with law.

The Board's denial of reopening will not be sustained (and thus the exercise of its discretion will not be held to be proper) if its ruling is not in accordance with law. *See Ghadessi v. INS*, 797 F.2d 804, 806 (9th Cir.1986) ("our review is limited to considering whether the BIA's 'determination concerning the prima facie case is correct.' ") (citation omitted) (emphasis in original). The BIA's action would be in accordance with law only if its conclusion

that a prima facie case was not established is correct. *See Larimi v. INS*, 782 F.2d 1494, 1496 (9th Cir.1986) ("The denial of a motion to reopen for failure to make out a prima facie case is always an appropriate exercise of discretion if the determination concerning the prima facie case is correct."); 5 U.S.C. § 706(2)(A). Thus, an agency will be held to have abused its discretion when it errs in determining what constitutes a prima facie case because "the court is accountable for the *correctness* of the interpretation it adopts." Levin, *Scope-of-Review Doctrine Restated*, 38 Ad. L.Rev. 239, 268 (1986) (comment to § (f), Restatement of Scope-of-Review Doctrine) (emphasis in original).

## B. *Prima Facie Case*

Dr. Abudu seeks relief both under section 208(a) of the Refugee Act, 8 U.S.C. section 1158(a) (asylum), and section 243(h) of the Act, 8 U.S.C. § 1253(h) (prohibition against deportation). Dr. Abudu now appeals from a denial of his motion to reopen his deportation proceedings so that he may present these claims for relief.

A *prima facie* case is established when an alien presents "affidavits or other evidentiary material," 8 C.F.R. § 103.5 (1986), which, if true, would satisfy the requirements for substantive relief. *Reyes v. INS*, 673 F.2d 1087, 1089–90 (9th Cir. 1982). The requirements for substantive relief under section 208(a) (asylum) are less stringent than those under section 243(h) (prohibition against deportation). *See Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1451 (9th Cir.1985), *cert. granted*, — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986). When a petitioner seeks substantive relief under section 243(h), he must demonstrate a clear probability that his life or freedom would be threatened if he returned to his country. *See INS v. Stevic*, 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). Persecution must be more likely than not. *Id.* at 429–30, 104 S.Ct. at 2501. Where the relief sought is asylum, however, the petitioner need only demonstrate that he is a refugee, i.e., that he has a

well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Cardoza-Fonseca,* 767 F.2d at 1451; 8 U.S.C. § 1101(a)(42)(A) (1982).

▬ The test for refugee status includes both a subjective and an objective component. *Bolanos-Hernandez,* 767 F.2d 1277, 1283 & n. 11 (9th Cir.1984). The subjective component is satisfied if the fear is genuine. The objective component is satisfied if persecution is, in fact, a reasonable possibility. *See id.* at 1282–83. In determining whether persecution is a reasonable possibility, the " 'conditions in the [alien's] country of origin, its laws and the experiences of others' " are relevant. *Bolanos-Hernandez,* 767 F.2d at 1283 n. 11 (citation omitted). The alien's desire " 'to avoid a situation entailing the risk of persecution' may be enough" to satisfy the well-founded fear test and thus establish eligibility for asylum. *Id.* (citation omitted).

▬ In order to prevail on his motion to reopen, Dr. Abudu must establish a *prima facie* case for relief based on new material evidence. *Hernandez-Ortiz,* 777 F.2d at 513. Reopening procedures are provided by regulations promulgated by the Attorney General. *INS v. Rios-Pineda,* 471 U.S. 444, 446, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985). The motion to reopen will not be granted unless "the evidence to be offered was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2. *See Samimi v. INS,* 714 F.2d 992, 994 (9th Cir.1983). Relief is sought "on the basis of circumstances which have arisen subsequent to the hearing." 8 C.F.R. § 3.2. If reopening is sought to apply for asylum, the motion must "reasonably explain" the failure to have sought asylum before the exclusion or deportation proceeding was administratively completed. Because motions to reopen are decided without hearing, the Board cannot make credibility determinations. *Hernandez-Ortiz,* 777 F.2d at 518. Accordingly, it must accept the factual statements in the alien's affidavit

as true. *See Stevic,* 467 U.S. at 421 n. 15, 104 S.Ct. at 2496 n. 15.

▬ Upon motion to reopen, the Board must draw reasonable inferences from the facts in favor of the petitioner. A motion to reopen is analogous to a motion for summary judgment; each is accompanied by affidavits and other evidentiary material and may be granted if the motion presents "proof that will support the desired findings [of a prima facie case] ... until it is contradicted or overruled by other evidence." *Maroufi v. INS,* 772 F.2d 597, 599 (9th Cir.1985). In both cases, inferences are to be drawn in favor of the party whose entitlement to further proceedings is at stake: the non-moving party under Fed.R.Civ.P. 56 and the alien seeking reopening under 8 C.F.R. 3.2. *See, e.g., U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) ("choice of inferences to be drawn from the subsidiary facts contained in the affidavits ... submitted [is inappropriate]. On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."); *Water West, Inc. v. Entek Corp.,* 788 F.2d 627, 628–29 (9th Cir.1986) (the court must "view the evidence and inferences ... in the light most favorable to the non-moving party."). The party seeking reopening must present " 'specific facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution.' " *Del Valle v. INS,* 776 F.2d 1407, 1411 (9th Cir.1985) (citation omitted) (emphasis omitted). *See also Ghadessi,* 797 F.2d at 808 (petitioner "had produced evidence from which an inference can be drawn that Iranian government authorities might be aware of her anti-Khomeini activities."). A motion consisting "solely of conclusory and speculative inferences drawn from generalized events" may be insufficient to justify reopening, *Maroufi,* 772 F.2d at 599. However, for purposes of the limited screening function of motions to reopen, the BIA must draw all reasonable

inferences in favor of the alien unless the evidence presented is "inherently unbelievable." *Hernandez-Ortiz*, 777 F.2d at 514.

 According to his affidavit, Dr. Abudu received a visit in the United States from a highly placed Ghanian official who attempted to discover the whereabouts of his brother and to lure Dr. Abudu back to Ghana. The brother, who shares the doctor's exact name, held high positions under the now deposed Limann government and was placed under house arrest, but escaped from Ghana and is now in hiding. The fact that there have been threats against members of an alien's family is sufficient to support the conclusion that the alien's life or freedom is endangered. *Hernandez-Ortiz*, 777 F.2d at 515. Moreover, Dr. Abudu's life-long friend, Joshua Hamidu, has been declared Rawlings' number one enemy and is closely associated with two other exiled enemies from previous regimes.

Finally, in May and June of 1983, there were two attempted coups involving dissidents from abroad. Dr. Abudu alleges that he is thus a potential suspect in any possible coup plot by exiled Ghanian dissidents because of his close personal relationships with Rawlings' enemies.

The Board erroneously found that Dr. Abudu failed to present objective and specific evidence that he is at risk of persecution. Dr. Abudu has presented new evidence supporting his motion to reopen proceedings in order to file for asylum and prohibition against deportation. While the visit from the Ghanian official could be viewed as benign, it could also be viewed, as Dr. Abudu suggests, as threatening. Viewing the inferences in favor of the petitioner as we must, we conclude that the affidavits made out a prima facie case of well-founded fear of persecution. Although prohibition against deportation involves a higher standard, and it is not clear that Dr. Abudu meets that standard, since an evidentiary hearing will in any event be required on the asylum claim and the relevant evidence will be identical on both claims, the BIA is required to consider whether Dr. Abudu is entitled to either or both forms of relief. *See Ghadessi*, 797 F.2d at 805 n. 1 ("As we hold that Ghadessi has established a prima facie case for asylum mandating reopening of proceedings, she should also be allowed to present evidence in support of a claim for prohibition of deportation."); 8 C.F.R. § 208.3(b).

The Board incorrectly found that all the considerations upon which Dr. Abudu relied in making his asylum and prohibition against deportation claims were in existence at the time he made the determination not to apply for such relief. Dr. Abudu has presented new evidence of material events that occurred subsequent to the deportation proceedings. The personal visit from the Ghanian official which occurred subsequent to the deportation proceedings could reasonably have placed Dr. Abudu in fear for his life. Dr. Abudu's earlier aborted claims do not negate the relevance of this new development. We reverse and remand for an evidentiary hearing on the asylum and prohibition against deportation claims.

Affirmed in part; reversed and remanded in part.