OPINION
PER CURIAM.
Li Jun Yan, a native and citizen of the People’s Republic of China (“China”), au *856 rived in the United States as a visitor on April 11, 1998. He overstayed his visa, and the Government charged him with removability. Yan conceded the charge and applied for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”).
Yan claims that he suffered past persecution and fears future persecution on the basis of his political opinion.[1] In his affidavit and his testimony, Yan described how he was treated poorly in China. He was doing well as the manager of the import and export department of a machinery and industrial equipment company. However, his brother-in-law’s father or his brother-in-law,[2] who was the director of the company, refused to promote a man named Yuancheng Wang. Wang hated Yan because of the director’s decision. After the director retired, Wang insinuated himself into the position of general manager of the company. From that position, he threatened, then exacted, revenge on Yan because the former director had passed him over for a promotion. He gave Yan a “hard time at different meetings.” He also “arranged for his trusted follower ... to interfere with [Yan’s] job.” Over time, it became “impossible for [Yan] to carry out [his] regular job and [he] was forced to leave [his] post and China.”
Yan fears future persecution not only because of how Wang and his underling treated him but also because of his activities as a member of the China Democracy Party (“CDP”) in the United States. Since joining the CDP in October 2004, Yan has participated in many protests in front of the Chinese Consulate General in New York. These protests were covered by television stations, newspapers, and websites. He has published articles critical of the Chinese government on the Internet. He serves as the Vice President of the Membership Department of the CDP, and he has recruited Mends to join the CDP. Yan also attended the memorial meeting of the former Chinese premier, Zhao Ziyang, which the Chinese government prohibited. He attended a forum on a book that describes the Chinese Communist Party as cheating the world and its people. He participated in military training led by Chaplain Yan Xiong, who was a student leader in the Tiananmen Square protests. According to Yan, Yan Xiong was arrested and jailed for his activities and is still regarded by the Chinese government as a counter-revolutionary figure. Yan contended that anyone associated with Yan Xiong is considered a counter-revolutionary activist.
Yan testified that the Chinese government became aware of his anti-government activities through the media and the Internet. He stated that Chinese policemen came to his home in China on December 25, 2004, and told his family members (his wife, child, mother, and sister) that he should return and surrender to the police and that they should cut their ties to him. The police returned in September 2005 and January 2006.
*857 In support of his claim, Yan provided a letter from his sister, which provided an overview of Yan’s experiences and a mention of the police visit in 2004. Also, Wang Yung, the Chairman of the CDP in the United States, testified and submitted an affidavit to describe Yan’s role in the CDP in fighting to end one-party rule in China. Yung also testified that he knew of a person who engaged in similar activities in the United States who was imprisoned on his return to China. In the record are pictures of Yan giving a speech and protesting, as well as articles he has written for the CDP (they appear to be published in a CDP newsletter or newspaper and on the CDP website, R. 114-24). The 2004 Country Report on Human Rights Practices in China is also in the record.
The Immigration Judge (“IJ”) believed that Yan was an active member of the CDP based on the testimony and evidence in the record. However, the IJ did not put much stock in the letter from Yan’s sister because she was not present to be cross-examined and the letter was brief and had a “strange sort of tone.” The IJ was not confident that the letter was “legitimate” or “authentic” because it seemed to have been created to influence a court instead of to correspond with a sibling. The IJ noted that he asked to be shown evidence in the background material in the record that would show a likelihood that activities in the United States could lead to persecution in China. The IJ stated that he had not been directed to any such evidence and did not see any in the record. “For [that] reason,” the IJ concluded that Yan had not met his burden of proof to show that his political activity in the United States would lead to persecution or torture in China.
Yan appealed to the Board of Immigration Appeals (“BIA”). The BIA affirmed the IJ’s decision. After briefly summarizing Yan’s claims, the BIA stated that any mistreatment Yan suffered in China was “strictly personal” and not on account of a protected ground. Referring to pages in the IJ’s opinion as well as other parts of the record, the BIA agreed with the IJ that Yan failed to meet his burden to show a well-founded fear of future persecution. The BIA also rejected the withholding and CAT claims. Yan presents a petition for review.[3]
We have jurisdiction over his petition pursuant to 8 U.S.C. § 1252(a). Questions of law are reviewed de novo, see Gerbier v. Holmes, 280 F.3d 297, 302 n. 2 (3d Cir.2001), while factual findings are reviewed for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir.2005). Under the substantial evidence standard, the BIA’s decision is upheld unless the evidence not only supports a contrary conclusion, but compels it. See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir.2001).
As we alluded to earlier, see swpra n. 1, Yan challenges an adverse credibility determination that does not exist. Although the IJ questioned the authenticity of a letter submitted into evidence, neither he nor the BIA made a credibility finding. Accordingly, we ignore the arguments in his brief relating to “the credibility finding.” Instead, we will presume that Yan’s testimony is credible, see Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir.2003), and will focus on the gist of Yan’s claim — that he was entitled to asylum and CAT protection.[4]
To the extent that Yan presented a claim for asylum based on past persecution, see supra, n. 1, the BIA did not err in rejecting it. The evidence supports the determination that Yan’s conflict with his supervisor was a personal/personnel conflict unrelated to Yan’s political opinion.
*858 However, we conclude that a remand is necessary in this case so that the agency may evaluate all of the evidence under the appropriate legal test to determine whether Yan met his burden to show a well-founded fear of future persecution based on his CDP activities in the United States. An applicant can show eligibility for asylum or withholding because of a likelihood of persecution due to political activities occurring in the United States. See Tun v. United States INS, 445 F.3d 554, 570 (2d Cir.2006); Ghadessi v. INS, 797 F.2d 804, 807-09 (9th Cir.1986). The applicant must show that “authorities in his country of nationality are either aware of his activities or likely to become aware of his activities.” Leng v. Mukasey, 528 F.3d 135, 138 (2d Cir.2008) (per curiam ).[5] Neither the IJ, searching primarily for evidence in the background materials (and not finding all of the evidence therein), nor the BIA, relying on the IJ’s analysis, considered all of the relevant evidence that Yan presented.
There is some testimony (deemed credible) and other evidence in the record that suggest that the Chinese government is aware of, or could become aware of, Yan’s activities in the United States. Yan testified that the Chinese government is aware of his political activities because of the articles he has written for the CDP and because of his presence at protests. He testified that Chinese police have gone to his house in China three times. Yung, whose credibility also was not assessed, testified that a friend who engaged in similar activities was sentenced to years in jail on his return to China.
Furthermore, despite the IJ’s conclusion to the contrary, there is evidence in the 2004 Country Report on Human Rights Practices that supports Yan’s claims.[6] Certainly, CDP is a group suppressed by the Chinese government: “Dozens of CDP leaders, activists, and members have been arrested, detained, or confined.” R. 138. People have been arrested and imprisoned for publishing articles critical of the Chinese government, including articles in support of the CDP. R. 147. Also, Chinese residents who were activists abroad have been imprisoned on return to their country. R. 155.
Nonetheless, we do not express any opinion on the appropriate outcome in this case. The agency may wish to weigh the evidence we have discussed against other evidence in the record and to consider the introduction of Country Reports more recent than the 2004 Country Report that was in the record We conclude only that a remand is necessary for the agency to consider all the evidence Yan presented under the appropriate legal test for asylum eligibility. Cf. Leng, 528 F.3d at 143. For this reason, we grant the petition for review and vacate the BIA’s order.[7]

. We note that Yan disavows a claim of past persecution before the agency, Appellant’s Brief 15, but his statement seems inconsistent with his arguments before the agency. Among other things also inconsistent with the proceedings in the agency is his statement that he seeks review of his (non-existent) motion to reopen, id. 1, the suggestion that this case relates to China’s one-child policy, id., the name on the right-hand corner of the cover of his brief, and the claim that the Immigration Judge made an adverse credibility finding, id. at 7. With regards to the last issue, and as the Government concedes, Appellee’s Brief 13, neither the Immigration Judge nor the Board of Immigration Appeals made an adverse credibility finding.

. Yan uses both terms in his affidavit.

. Yan previously sought a stay of removal, which we granted.

. He does not argue that he is entitled to statutory withholding of removal.

. Although the Second Circuit Court of Appeals does not cite Ghadessi, its test serves as an accurate summary of the test used in that case. See 797 F.2d at 808.

. Although Yan references the 2007 Country Report in his brief, see Appellant’s Brief 17-18, we do not consider the 2007 Country Report because it is not part of the administrative record before us. See 8 U.S.C. § 1252(b)(4)(A) (stating that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based”).

.As the Government notes in its brief, Yan's CAT claim is based on the same factual premise. Accordingly, on remand, after the agency assesses the risk of future persecution, the agency may again consider the claim for CAT relief. As we stated in relation to the asylum claim, we do not express an opinion on the ultimate merit of any of Yan's claims for relief.