21 F.3d 1122
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Pacita Dadulla PARAFINIA, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-9528.
 United States Court of Appeals, Tenth Circuit.
 April 19, 1994.
 
 1
 Before BRORBY and EBEL, Circuit Judges, and KANE,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Petitioner seeks review of the decision of the Board of Immigration Appeals (BIA) finding petitioner deportable pursuant to 8 U.S.C. 1251(a)(1), 1182(a)(20),[2] for having entered the United States without a valid immigrant visa. We consider whether the BIA violated petitioner's due process rights by relying on factual allegations not set forth in the original order to show cause (OSC) to support its final deportation order and whether the BIA erred in refusing to reverse the immigration judge's (IJ) denial of petitioner's motion for a continuance or to grant petitioner a continuance, itself. We answer the questions in the negative and affirm.
 
 
 4
 Petitioner entered the United States from the Philippines on February 16, 1986, pursuant to an immigrant visa she obtained on January 29, 1986, as the unmarried daughter of a lawful permanent resident alien. The INS commenced deportation proceedings against petitioner in 1987 on the ground that at the time she obtained her visa, petitioner represented she was not married when, in truth, she had been lawfully married to Paulito Sansaet since 1973. The OSC alleged that petitioner's visa "was procured by fraud or by willfully misrepresenting a material factor," and charged that petitioner was subject to deportation because, as an immigrant alien not in possession of a valid unexpired immigrant visa at the time of entry, she was within "one or more of the classes of aliens excludable by the law existing at the time of such entry." R. at 139.[3]
 
 
 5
 The IJ held a hearing on the OSC at which petitioner was present with counsel. The INS introduced a copy of a marriage contract reflecting that petitioner and Sansaet were married on March 12, 1973, in the Philippines. The INS also introduced a copy of a marriage contract between petitioner and Sansaet reflecting the two were married again in the Philippines on February 12, 1986, just two days before petitioner entered the United States.
 
 
 6
 Petitioner's counsel did not object to the admission of the 1973 marriage contract. Rather, counsel attempted to show through the testimony of petitioner's sister that the 1973 marriage was not valid.[4] Petitioner's sister testified that her mother had told her that petitioner's father had coerced petitioner into the marriage with Sansaet because she was pregnant, that petitioner was not even present at the ceremony, and that Sansaet left shortly thereafter.[5] At the end of the proceedings, after studying more carefully the copy of the 1973 marriage contract introduced into evidence, petitioner's counsel noted that the copy appeared to be incomplete. Counsel then objected to the IJ relying on the exhibit as prima facie evidence of a valid marriage. The IJ overruled counsel's objection.
 
 
 7
 When first introduced, petitioner's counsel objected to the admission of the 1986 marriage contract on the ground that it was irrelevant to the factual allegations set forth in the OSC. Counsel argued that the OSC alleged only that petitioner's visa was invalid because she was married at the time she obtained it--not that the visa was invalidated by a marriage subsequent to its issuance--and that petitioner had no prior notice that the INS intended to rely on the 1986 marriage to support the deportation charge. Counsel for the INS conceded that the OSC did not allege that the visa was invalidated by petitioner's 1986 marriage, but noted that petitioner had signed a written warning on Department of State Optional Form 237 informing her that if she married before she entered the United States, she would lose her status as an unmarried daughter of a lawful permanent resident alien and would be subject to exclusion from the United States.
 
 
 8
 The IJ admitted the 1986 marriage contract into evidence on the ground that it was relevant to the charge that petitioner was excludable at the time of her entry because she did not possess a valid immigrant visa. Petitioner then presented evidence, again through her sister, that the 1986 marriage resulted from Sansaet convincing petitioner, just before she left for the United States, to marry him again "for the kids"[6] because he was not sure whether the first marriage was legal. R. at 54.
 
 
 9
 At the conclusion of the hearing, petitioner's counsel asked for a ten-day continuance to obtain an affidavit from an officer at the Philippine Consulate in Washington, D.C., with whom counsel had conversed. Counsel said he had prepared an affidavit for the officer to sign concerning the validity of "marriages entered [in]to under duress or entered [in]to without an intention of being married," as well as "marriages entered into in a civil ceremony." Id. at 60. Counsel argued that the affidavit was relevant to the issue of whether the 1973 marriage was void from the start and, therefore, whether the statements on petitioner's visa application as to her marital status were inaccurate. As to the 1986 marriage, counsel contended there was a question as to "whether or not that marriage was entered into with an intention of being married or whether that marriage was entered into under duress." Id. at 61.
 
 
 10
 The IJ denied the requested continuance. He concluded that none of the circumstances set forth in In re Agustin, 17 I & N Dec. 14 (1979), for declaring a marriage void ab initio in the Philippines were present here and that the two marriage contracts admitted into evidence constituted prima facie evidence of petitioner's valid marriage before her entry into the United States. The IJ ultimately found petitioner deportable on the basis of her 1973 and 1986 marriages, both of which made her ineligible for entry into the United States as an unmarried daughter of a lawful permanent resident alien.
 
 
 11
 Petitioner then appealed to the BIA, which also found petitioner deportable. The BIA based its decision on petitioner's 1986 marriage and did not reach any of the issues petitioner raised as to the validity of her 1973 marriage and the IJ's reliance on the incomplete copy of the 1973 marriage contract as prima facie evidence of a valid marriage. The BIA also concluded that the IJ did not abuse his discretion in denying petitioner's motion for a continuance to obtain the affidavit from the Philippine Consulate.
 
 
 12
 In her petition for review of the BIA's decision, petitioner argues that the BIA erred in failing to address the issues relating to her 1973 marriage and, instead, relying exclusively on the evidence of her 1986 marriage to support the deportation order. Petitioner contends that because the OSC did not allege her 1986 marriage as a factual basis for the charge, the evidence relating to that marriage was irrelevant and immaterial, and neither the IJ nor the BIA were entitled to rely on it as a basis for deportation. Petitioner also contends that the IJ abused his discretion in denying her motion for a continuance. We will address each of petitioner's arguments in turn.
 
 
 13
 Reliance on the 1986 marriage.
 
 
 14
 "[N]oncitizens, even those charged with entering the country illegally, are entitled to due process when threatened with deportation. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." De La Llana-Castellon v. INS, No.92-9534, 1994 WL 45565, at * 3 (10th Cir. Feb.16,1994)(internal quotations and citations omitted). More specifically,
 
 
 15
 due process requires that the respondent in a deportation hearing receive timely notice; that he have an opportunity to be heard, to cross-examine witnesses against him, and to produce evidence; that the decision be based on the evidence and only on the evidence produced at the hearing;[7] and that the decision be supported by substantial evidence.
 
 
 16
 United States v. Gasca-Kraft, 522 F.2d 149, 152 (9th Cir.1975); see also 8 U.S.C. 1252(b)(1)-(4).
 
 
 17
 "[A]dequate notice is the first and foremost prerequisite of a fair hearing." Aalund v. Marshall, 461 F.2d 710, 712 (5th Cir.1972). An alien subject to deportation is given notice through the OSC, which should "advise an alien of his alleged violation with sufficient precision to allow him to defend himself." Abudu v. INS, 802 F.2d 1096, 1099 (9th Cir.1986), rev'd in part on other grounds, 485 U.S. 94 (1988). The regulations require the OSC to
 
 
 18
 contain a statement of the nature of the proceeding, the legal authority under which the proceeding is conducted, a concise statement of the factual allegations informing the respondent of the act or conduct alleged to be in violation of the law, and a designation of the charge against the respondent and of the statutory provisions alleged to have been violated.
 
 
 19
 8 C.F.R.242.1(b).
 
 
 20
 The INS need not "advance every conceivable basis for deportability in the original show cause order," De Faria v. INS, 13 F.3d 422, 424 (1st Cir.1993), however, and may lodge "additional or substituted charges of deportability and/or factual allegations" at any time during the deportation hearing, 8 C.F.R.3.28. Thus, the INS has the ability "to amend its factual allegations to conform to the evidence presented at the deportation hearing." Ballbe v. INS, 886 F.2d 306, 309 (11th Cir.1989), cert. denied, 495 U.S. 929 (1990).
 
 
 21
 If the INS wishes to advance additional factual allegations in support of the deportation charge, the regulations require the INS to do so "in writing for service on the respondent and entry as an exhibit in the record." 8 C.F.R. 242.16(d). Furthermore, the IJ must "read the additional factual allegations ... to the respondent and explain them to him or her," must advise an unrepresented respondent of his right to retain counsel, and must give the respondent "a reasonable time within which to meet the additional factual allegations" if the respondent so desires. Id.
 
 
 22
 The INS conceded at the deportation hearing that the original OSC did not contain any factual allegations relating to petitioner's 1986 marriage and its effect on the validity of her immigrant visa.[8] Likewise, the record reflects that the INS did not follow the requirements of 242.16(d) in introducing additional factual allegations to support the deportation charge. Under the circumstances, petitioner argues, the BIA's reliance on the evidence of petitioner's 1986 marriage to support the deportation charge was "arbitrary and unfair." Petitioner's Br. at 7.
 
 
 23
 "To establish fundamental unfairness sufficient to constitute a violation of due process, [the alien] must show that he suffered prejudice from the alleged unfairness." United States v. Mendoza-Lopez, 7 F.3d 1483, 1485 (10th Cir.1993), petition for cert. filed, No. 93-7653 (Jan.24,1994); see also United States v. Cerda-Pena, 799 F.2d 1374, 1377 (9th Cir.1986)(holding that violation of an immigration regulation will not make deportation unlawful if violation did not "prejudice[ ] the interests of the alien that it was designed to protect"); In re Santos, 19 I & N Dec. 105, 107 (1984)(holding that alien must show prejudice resulting from violation of procedural rule or regulation to establish due process violation). But see Montilla v. INS, 926 F.2d 162, 167-69 (2d Cir.1991)(rejecting requirement that alien show prejudice resulting from violation of regulation to establish due process violation, and holding that alien need show only that regulation was for his benefit and that INS failed to follow it).
 
 
 24
 Although the INS did not follow the requirements of 242.16(d), petitioner knew at the hearing that the INS intended to rely on the evidence of the 1986 marriage to support the deportation charge, and petitioner had the opportunity to present any evidence she then had available to dispute the validity of that marriage. The only evidence petitioner offered was the testimony of her sister that petitioner told her she married Sansaet again in 1986 for the sake of her children because Sansaet was unsure whether their 1973 marriage was valid. Petitioner's counsel did not indicate to the IJ that he needed additional time to gather and present evidence relevant to the validity of the 1986 marriage,[9] nor did counsel suggest to the BIA, or to this court, that he would have produced any additional evidence to refute the validity of the 1986 marriage had the IJ given him additional time in which to do so.
 
 
 25
 Under the circumstances, petitioner has not shown that she was prejudiced by the INS' failure to comply with the requirements of 242.16(d) in introducing additional factual allegations in support of the charge. Cf. Acewicz v. United States INS, 984 F.2d 1056, 1063 (9th Cir.1993)(holding that because aliens did not argue that "the time constraint prevented them from presenting relevant evidence," they failed to show prejudice resulting from receiving only one day's notice of their deportation hearings). Therefore, while we do not condone the INS' failure to follow the procedures set forth in its own regulations, we conclude that the BIA's reliance on petitioner's 1986 marriage to support the order of deportation was not fundamentally unfair and did not violate petitioner's right to due process under the circumstances presented here. But see Hirsch v. INS, 308 F.2d 562, 566 (9th Cir.1962)(holding that BIA could not rely on evidence, introduced without objection at hearing, of convictions that were not alleged in either the original or the amended arrest warrant).
 
 
 26
 The motion for a continuance.
 
 
 27
 The decision to grant or deny a continuance of the deportation proceedings lies in the sound discretion of the IJ. E.g. Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1985). To determine whether the IJ abused his discretion in denying petitioner's requested continuance, we must examine the particular circumstances of the case, "particularly ... the reasons presented to the [IJ] at the time the request [was] denied." Id. (internal quotations omitted). We must also consider "the nature of the evidence to be presented and its importance to the [petitioner's] case." Baires v. INS, 856 F.2d 89, 92 (9th Cir.1988).
 
 
 28
 Petitioner's counsel argues in his brief in support of the petition for review that the IJ abused his discretion in failing to grant petitioner a ten-day continuance so that counsel could "familiarize himself with the facts and circumstances surrounding the 1986 marriage." Petitioner's Br. at 6. Counsel never advanced this reason for a continuance before the IJ, however. Rather, the record reflects that counsel sought the continuance solely to obtain the affidavit from the Philippine Consulate concerning the validity of marriages entered into under duress, or without the intention of being married, or in a civil ceremony.
 
 
 29
 We note initially that although counsel told the IJ that he had conversed with the consulate officer concerning whether certain factors might affect the validity of a marriage in the Philippines and had prepared the affidavit the officer was to sign, counsel did not tell the IJ what the proposed affidavit would opine as to the validity of a Philippine marriage entered into under duress, without the intention of being married, or in a civil ceremony. Nor has counsel informed either the BIA or this court of the contents of the affidavit, or otherwise offered any legal authority to support his apparent contention that if petitioner married Sansaet under any of the three circumstances mentioned above, then the marriage was void.[10]
 
 
 30
 Even if we assume that the officer would have opined that any of the three circumstances at issue would have voided petitioner's marriages ab initio, counsel has not indicated how the affidavit would have been relevant in light of the evidence adduced at the hearing. Absent evidence that petitioner married under duress, without the intention of being married, or in a civil ceremony, the consulate officer's opinion on the effects of such circumstances would have been irrelevant.
 
 
 31
 From our own review of the record, we note that petitioner's sister did testify that petitioner's father coerced petitioner into the 1973 marriage. The sister did not testify, however, that petitioner participated in the wedding ceremony, but without the intention of actually being married. Rather, the sister testified that she understood petitioner did not even attend the ceremony. Petitioner's own testimony confirmed this understanding. Likewise, petitioner's sister never testified that petitioner was married in a civil ceremony, though she did indicate that petitioner was not married in a church. The 1973 marriage contract reflects that the marriage was solemnized by a minister. Finally, neither the sister's testimony nor any other evidence adduced at the hearing suggested that petitioner consented to the 1986 marriage under duress, that she had no intention of being married, or that the marriage was performed in a civil ceremony.
 
 
 32
 Thus, the affidavit counsel sought additional time to obtain would have been only slightly relevant to the issue of whether petitioner's 1973 marriage was valid, and would have been completely irrelevant to the issue of whether petitioner's 1986 marriage was valid. Under the circumstances, the IJ did not abuse his discretion in denying petitioner's motion for a continuance, and the BIA did not err in refusing to reverse that denial or to grant petitioner a continuance, itself. See Kashefi-Zihagh v. INS, 791 F.2d 708, 711 (9th Cir.1986)(holding that neither IJ nor BIA abused his/its discretion in denying alien continuance to obtain translation of document and additional affidavits; alien failed to explain to IJ why he could not obtain evidence before hearing and made no attempt to present the evidence to BIA); Olvera v. INS, 504 F.2d 1372, 1374 (5th Cir.1974)(holding that IJ's denial of continuance did not violate alien's right to gather and present evidence when the evidence alien sought to obtain was of "uncertain value" and IJ had other probative evidence before him).
 
 
 33
 The decision of the Board of Immigration Appeals is, therefore, AFFIRMED, and the petition for review is DISMISSED.
 
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The provisions of former 1182(a)(20) are now codified at 1182(a)(7)
 
 
 [3]
 If an IJ determines that an alien is not actually entitled to the status accorded her by the visa petition, such as the status of unmarried daughter of a lawful permanent resident, the IJ may conclude that the visa is invalid. In re Alarcon, 17 I & N Dec. 574, 576 (1980). Thus, an applicant for entry into the United States who is not entitled to the status specified in her visa is excludable pursuant to 8 U.S.C. 1182(a)(20). In re Alarcon, 17 I & N Dec. at 576; see also Sachdev v. INS, 788 F.2d 912, 913-14 (2d Cir.), cert. denied, 479 U.S. 914 (1986)
 
 
 [4]
 Petitioner asserted her Fifth Amendment privilege not to testify at the beginning of the hearing
 
 
 [5]
 Near the end of the proceedings, petitioner consented to answer several questions asked by her counsel. Among other things, petitioner testified that she was not present at any marriage ceremony with Sansaet in 1973
 
 
 [6]
 The evidence indicated that in addition to the twins with whom petitioner was pregnant in 1973, petitioner subsequently had two other children, whose birth certificates listed Sansaet as the father
 
 
 [7]
 As discussed in De La Llana-Castellon, 1994 WL 45565 at * 4, under appropriate circumstances, the decision also may be based in part on administrative notice of facts not adduced at the deportation hearing
 
 
 [8]
 "According to the regulations, approval of a visa petition is automatically revoked if the beneficiary, who has been accorded status as the son or daughter of a lawful permanent resident, gets married. See 8 C.F.R.205.1(a)(8)." In re Alarcon, 17 I & N Dec. at 575-76
 
 
 [9]
 As discussed below, counsel did not make an adequate showing that the affidavit he sought to obtain from the Philippine Consulate was relevant to the validity of the 1986 marriage
 
 
 [10]
 To the contrary, none of these three circumstances is included in the list of circumstances that will void a marriage ab initio under Philippine law set forth by the BIA in In re Agustin, 17 I & N Dec. at 15-16. Furthermore, the BIA specifically rejected the contention "that a marriage between two parties who have not freely given their consent to the marriage is void ab initio under Philippine law," id. at 17, and held that a marriage that is merely voidable "is generally regarded as valid until annulled or otherwise terminated," id. at 16. Finally, the BIA noted that under Philippine law, marriages may be solemnized by judges, mayors, ship captains, airplane chiefs, military commanders, consuls, and vice consuls in addition to priests, ministers, and rabbis, id., which suggests that marriages performed in civil ceremonies are as valid as those performed in religious ceremonies