**Reginaldo DIAZ–ESCOBAR, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 84–7252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1985.

Decided Feb. 14, 1986.

---

Michelle L. Crawford, El Centro, Cal., for petitioner.

Alison R. Drucker, Washington, D.C., for respondent.

Before CHOY, GOODWIN, and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Diaz-Escobar appeals the decision of the Board of Immigration Appeals (BIA) denying his request for asylum and for withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105a. We affirm.

## I

Diaz-Escobar is a native and citizen of Guatemala who entered this country without inspection on October 14, 1982. On October 18, 1982, the Immigration and Naturalization Service (INS) instituted deportation proceedings against him by issuing an Order to Show Cause. At his deportation hearing, Diaz-Escobar conceded deportability under 8 U.S.C. § 1251(a)(2), designating Costa Rica as the country of deportation, but petitioned for either asylum or withholding of deportation.

He stated in his application for these special relief provisions that he was unwilling to return to Guatemala for fear of being executed or persecuted if he continued to remain neutral in the conflict between the leftist guerrillas and the government. He added that he felt more secure in the United States. In his oral testimony, Diaz-Escobar stated that his departure from Guatemala was triggered by an anonymous letter found on the windshield of his car. He did not remember the exact date he received the alleged letter, nor could he produce it. But he testified that it warned him to leave the country or "be subject to the consequences." He admitted that he had never been harmed by the Guatemalan government nor had he had any problems with the guerrillas, although he testified

that he had been a member of the military reserve during 1981 and produced a military identification card dated 1965. He also testified that he had been tried for committing homicide with a machete in 1977, but had been acquitted on the ground of self-defense. He testified that he had no idea who sent the letter or why anyone would send it to him. But he testified that he took the alleged threat seriously because he would not have been "the first person that had died from anonymous letters." He traveled through Mexico to reach this country, but did not request asylum from the Mexican authorities.

The immigration judge (IJ) requested an advisory opinion from the State Department's Bureau of Human Rights and Humanitarian Affairs, which concluded that Diaz-Escobar had failed to establish a well-founded fear of being persecuted in Guatemala if he were returned there. The IJ came to the same conclusion and thus denied the petitions for asylum and withholding of deportation. The IJ reasoned that Diaz-Escobar's testimony concerning the letter did not establish a well-founded fear of persecution. Because he could neither produce it or any other evidence corroborating his testimony about it nor explain convincingly why he feared its alleged threat, having stated that he did not know who wrote it and that he had no known enemies, there was nothing to suggest that it was a serious, politically motivated threat. Other than the letter, the IJ found nothing in the record that could possibly suggest that Diaz-Escobar might be singled out from other Guatemalans for persecution on account of one of the five statutory grounds. The IJ stated that Diaz-Escobar had never spoken out against the government, the government had never mistreated him, it had granted him an honorable discharge from the military reserve, and it had issued him a passport. Diaz-Escobar appealed to the BIA, but the BIA dismissed the appeal on the basis of its agreement with the IJ that Diaz-Escobar had failed to establish a well-founded fear of persecution.

## II

This appeal involves claims under the asylum and withholding of deportation provisions. Section 208(a) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1158(a), gives the Attorney General discretion to grant an alien political asylum if the Attorney General determines the alien to be a refugee within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). That section defines a refugee as any person outside his country of nationality or habitual residence who is unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* Under section 208(a), therefore, asylum is a two-part process involving a determination of statutory eligibility and a discretionary determination once eligibility is established. If an alien is granted asylum, he obtains a full range of benefits including freedom of movement, employment rights, certain forms of public assistance, and potential adjustment of status after one year to that of a permanent resident alien without being subject to numerical limitations.

Like asylum, section 243(h) of the Act, 8 U.S.C. § 1253(h), provides benefits for illegal aliens who potentially face persecution, though its benefits are more limited. But this limitation is balanced by the fact that its benefits are mandatory rather than discretionary once the petitioner meets the statutory eligibility standards. It states that "[t]he Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.*

## A.

Diaz-Escobar argues that although the IJ ruled he had no reasonably based fear of persecution, the BIA erred in dismissing the appeal by suggesting that the well-founded fear of persecution standard required proof of a clear probability of persecution. Prior to enactment of the Refugee Act of 1980, an alien arguably had to show a clear probability of persecution to meet the statutory threshold for asylum. *See Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1282 n. 10 (9th Cir.1984) *(Bolanos).* The Refugee Act was intended to bring the language of our political asylum laws in line with articles 1.2 and 33.1 of the *United Nations Convention Relating to the Status of Refugees,* 189 U.N.T.S. 150 (July 28, 1951). In *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) *(Stevic),* the Supreme Court held that the Refugee Act did not lessen the burden of proof for obtaining withholding of deportation from a clear probability of persecution. The Supreme Court assumed arguendo in *Stevic* that asylum's well-founded fear of persecution standard was a lesser burden, *id.* 104 S.Ct. at 2498, but it explicitly reserved that legal question. *Id.* at 2501. In *Bolanos,* we answered the question and stated that the well-founded fear standard is indeed a lesser burden than the clear probability of persecution standard, although we left open the question just what the well-founded fear standard requires. 767 F.2d at 1282–83; *see also Garcia-Ramos v. INS,* 775 F.2d 1370 (9th Cir.1985) *(Garcia-Ramos).*

Contrary to Diaz-Escobar's argument, the BIA did not equate the content of the well-founded fear standard with that of the clear probability standard. The BIA held that because Diaz-Escobar failed to show a well-founded fear of persecution, he *a fortiori* failed to show a clear probability of it whether or not the latter standard is more stringent or the same as the former. This is not an error of law.

## B.

Even though the BIA used an appropriate legal standard for Diaz-Escobar's asylum claim, we must still review whether there was substantial evidence in the record to support the decision that Diaz-Escobar failed to show a sufficient danger of the type of persecution mentioned in the

asylum or withholding of deportation provisions to satisfy the statutory threshold for asylum or to obtain withholding of deportation relief. *See McMullen v. INS*, 658 F.2d 1312, 1316 (9th Cir.1981). If the BIA is correct that Diaz-Escobar failed to demonstrate a well-founded fear of persecution, we will need to proceed no further because *a fortiori*, Diaz-Escobar would have failed to meet the more stringent standard of clear probability of persecution.

■ We must first consider what a well-founded fear of persecution means. The Supreme Court has stated that the clear probability of persecution standard requires proof that persecution is more likely than not. *See Stevic*, 467 U.S. at 424, 104 S.Ct. at 2498. In *Bolanos*, we stated that the well-founded fear standard is less burdensome than a clear probability, but we did not define it further except to state that it had both a subjective and an objective component. *See* 767 F.2d at 1283 n. 11; *see also Garcia-Ramos*, 775 F.2d at 1373–74. The subjective component requires a showing that the alien's fear is genuine. The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution. *See Espinoza-Martinez v. INS*, 754 F.2d 1536, 1540 (9th Cir.1985) ("specific" and "objective" evidence); *Martinez-Romero v. INS*, 692 F.2d 595, 595–96 (9th Cir.1982) (per curiam) ("special circumstances" must be present—evidence of widespread violence is insufficient); *cf. Garcia-Ramos*, 775 F.2d at 1374 (evidence of open and extensive activism in a persecuted political group may suffice); *Zepeda-Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984) (evidence of general climate of violence insufficient to justify withholding of deportation). The petitioner need not show that his well-founded fear is "more likely than not," i.e., a "clear probability." *See Stevic*, 467 U.S. at 424 n. 19, 104 S.Ct. at 2498 & n. 19. The showing may be slightly less than such a probability, although it must be grounded in substantial record evidence. *See id.* at 2498. The objective component ensures that an alien's subjective

fear is "well-founded" in fact and not in fantasy. *See id.* Thus, to secure relief, the alien must meet the burden of proving both components. Whether a "well-founded fear" of persecution is called a "reasonable chance," a "reasonable possibility," a "reasonable probability," or a "reasonable expectation" is not decisive. What is critical is that the alien prove his fear is subjectively genuine and objectively reasonable. *Garcia-Ramos*, 775 F.2d at 1373–74.

## C.

■ The relevant evidence offered by Diaz-Escobar consisted solely of his own testimony, without direct corroboration. Although we give serious consideration to such testimony if unrefuted, credible, and indirectly corroborated, *see Bolanos*, 767 F.2d at 1283 & n. 11, deference must be given "to the immigration judge's *express and implied* determination concerning credibility where the record supports this finding." *Saballo-Cortez v. INS*, 761 F.2d 1259, 1266 (9th Cir.1984) (*Saballo-Cortez*) (emphasis added). The Supreme Court recently stated in *INS v. Rios-Pineda*, —— U.S. ——, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985) (*Rios-Pineda*), that "[i]n this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates *de novo* appellate review." *Id.*, 105 S.Ct. at 2103. Thus, although the substantial evidence standard of review requires slightly stricter scrutiny than the ordinary clear error standard, *see Bolanos*, 767 F.2d at 1282 n. 8, courts must be careful to keep it sufficiently more deferential than de novo review. This is a somewhat delicate task when the alien bears the burden of proof as he does in both asylum and withholding of deportation cases. To hold that once an alien puts forth unrefuted and credible testimony he automatically satisfies his burden of proof unless the INS comes forth with substantial evidence to rebut the testimony would approximate de novo review. *See id.; see also Saballo-Cortez*, 761 F.2d at 1265 n. 4.

### D.

There is substantial evidence in the record to support the conclusion that Diaz-Escobar failed to establish an objectively reasonable fear or expectation of persecution and thus, regardless of the subjective component, he failed to establish that his fear was well-founded. The only portion of Diaz-Escobar's testimony tending to support his claim centered on the allegedly threatening letter. On this point, Diaz-Escobar's testimony was unrefuted. Neither the IJ nor the BIA questioned his credibility with respect to it. The likelihood that such a letter might have existed and that such threats might be carried out was indirectly corroborated by the conditions of turmoil in Guatemala just as was the alien's testimony in *Bolanos. See* 767 F.2d at 1284–86. The magnitude of the threat was serious. The source of the threat was left wholly to speculation. The BIA did not believe that the annonymous threat provided a foundation for a well-founded fear of persecution. Consequently, the BIA found it to be immaterial that the INS failed to rebut the alien's proof with substantial evidence.

■ We agree because Diaz-Escobar's evidence does not establish a reasonable expectation of persecution. There is no indication in the record that the notice on his windshield was from any political organization. It could have come from a variety of sources: relatives of the person he killed, friends who were attempting to give him a warning, pranksters, et cetera. Indeed, there is no indication that he would not be secure if he returned to Guatemala. His argument is not that the government would persecute him, but that the guerrillas would do so. It was admitted during oral argument that he is in good stead with the government. Indeed, this is clear from his army service and his receipt of a passport. His argument is that in the particular part of the country from which he came, people receive threats and are killed. Repatriation to a country does not force the alien to return to the village he left.

■ The substantial evidence standard of review does not require the INS to produce any evidence at all if the alien does not independently satisfy his burden initially. *See Saballo-Cortez,* 761 F.2d at 1265 n. 4. If it did, it would clearly be a usurpation of Congress' authority to allocate the burden of proof to the alien. *See Rios-Pineda,* 105 S.Ct. at 2102–03. All the substantial evidence standard requires is that the BIA's conclusion, based on the evidence presented, be substantially reasonable. *Saballo-Cortez,* 761 F.2d at 1265 n. 4. If the alien presents insufficient evidence to meet his burden of proof, i.e., fails to show his fear is genuine and a reasonable expectation of persecution, then there would be substantial evidence in the record to support a decision that he failed to satisfy the statutory eligibility threshold for asylum, even if the INS produces no evidence.

■ Our decision to affirm the BIA in this case does not create a conflict with *Bolanos, Garcia-Ramos,* or *Argueta v. INS,* 759 F.2d 1395 (9th Cir.1985) (*Argueta*). Under the deferential substantial evidence standard, we may not reverse the BIA simply because we disagree with its evaluation of the facts, but only if we conclude that the BIA's evaluation is not supported by substantial evidence. *Garcia-Ramos,* 775 F.2d at 1373; *Argueta,* 759 F.2d at 1396–98 & n. 4. The BIA's decisions in *Bolanos, Garcia-Ramos,* and *Argueta* were found not to be supported by substantial evidence. That is not the case here.

### E.

Diaz-Escobar also claims that any threats to him would be on account of his political opinion of neutrality. To secure relief, an alien must prove the "persecution [is] on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (asylum): *see also* 8 U.S.C. § 1253(h) (withholding of deportation). Although *Bolanos* held that open assertions of neutrality may constitute political opinion for which one may be persecuted, *see* 767 F.2d

at 1286–88 & n. 18, an alien must still prove that the alleged persecution threat exists because of his neutrality opinion. *Hernandez-Ortiz v. INS,* 777 F.2d 509, 516 (9th Cir.1985); *see* 8 U.S.C. §§ 1101(a)(42)(A), 1253(h). A mere failure to take sides or even open and vigorous advocacy of neutrality rarely triggers retribution. That is why nations often find it advantageous to remain neutral. Thus, if the alleged threat were motivated by some reason other than Diaz-Escobar's political opinion or one of the four other statutory grounds, then his proof of the threat would be irrelevant to his asylum and withholding of deportation applications. Diaz-Escobar presented no evidence that the threats against him were politically motivated.

Because we hold that there is substantial evidence that Diaz-Escobar did not prove one of the two required components of a well-founded fear of persecution and thus failed to meet the threshold requirement, we need not reach the question of whether he has proven the alleged persecution is "on account of ... political opinion."

### III

Diaz-Escobar's last contention is that his deportation proceedings violated due process because the IJ refused to admit certain evidence. We need not consider the merits of this claim because Diaz-Escobar failed to show how the IJ's action resulted in substantial prejudice to him. *Ka Fung Chan v. INS,* 634 F.2d 248, 258 (5th Cir. 1981).

AFFIRMED.