921 F.2d 280
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Faramarz Farahani JALALI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 
 1
 No. 89-70033.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted July 16, 1990.
Decided Jan. 2, 1991.
 
 3
 Before ALARCON and POOLE, Circuit Judges, and HATTER, District Judge*.
 
 
 4
 MEMORANDUM**
 
 
 5
 Faramarz Farahani Jalali petitions for review of the Board of Immigration Appeals' (BIA) order affirming the Immigration Judge's (IJ) decision denying his requests for asylum and prohibition against deportation. Jalali contends that the BIA erred in determining that his refusal to participate in the Iranian military is not a valid ground for political asylum. He further contends that the BIA erred in refusing to consider new documentary evidence he presented to the BIA for the first time on appeal. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a) (1988). We affirm the decision of the BIA and deny the petition.
 
 
 6
 We review the factual findings underlying the BIA's denial of prohibition against deportation and asylum under the substantial evidence test. Arteaga v. INS, 836 F.2d 1227, 1228 (9th Cir.1988). The BIA's determinations on questions of law are reviewed de novo. Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988). When the decisions of both the IJ and the BIA are silent on the issue of credibility, the petitioner's testimony is presumed credible. Canjura-Flores v. INS, 784 F.2d 885, 888-89 (9th Cir.1985).
 
 
 7
 * Jalali contends that the BIA erred in denying his request for asylum because his refusal to participate in the Iranian military is a valid ground for political asylum. Under the circumstances of this case, we disagree.
 
 
 8
 An alien who demonstrates "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" is eligible for the discretionary relief of asylum. Cardoza-Fonseca v. INS, 767 F.2d 1448, 1451 (9th Cir.1985) (quoting 8 U.S.C. Sec. 1101(a)(42)(A) (1988)), aff'd, 480 U.S. 421 (1987); see 8 U.S.C. Sec. 1158(a) (1988).[1] The "well-founded fear" standard requires that the alien's fear be genuine, Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam), and that the alien demonstrate "by credible, direct, and specific evidence in the record," Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1986), that persecution is a reasonable possibility on one of the five statutorily-impermissible bases. INS v. Cardoza-Fonseca, 480 U.S. 421, 440 (1987); see also Rivas v. INS, 899 F.2d 864, 866 (9th Cir.1990).
 
 
 9
 Jalali testified before the IJ that he left Iran to avoid military service. He argues on appeal that the BIA ignored or discounted substantial evidence that his flight from Iran to avoid reconscription was sufficient by itself to serve as a basis for a religious or political persecution claim. This argument lacks merit. Jalali cannot base his claim for asylum solely on his wish to avoid conscription into the Iranian army. See Rodriguez-Rivera, 848 F.2d at 1005 ("Rodriguez-Rivera ignores ... that the government's effort to recruit him into the military does not constitute political persecution."); Kaveh-Haghigy v. INS, 783 F.2d 1321, 1323 (9th Cir.1986) (per curiam) ("Even petitioners admit that being drafted into the Iranian army does not amount to persecution.").
 
 
 10
 Jalali also contends, however, that he is a conscientious objector because his political and religious beliefs made it impossible for him to serve in the Iranian army. He further contends that the BIA erred in finding that he failed to show the government would harm him on account of his religious beliefs. These contentions lack merit.
 
 
 11
 A conscientious objection claim must be based on "genuine political, religious, or moral convictions, or other genuine reasons of conscience." Canas-Segovia v. INS, 902 F.2d 717, 726 (9th Cir.1990). Here, Jalali has presented no evidence that the Islamic religious forbids its adherents from performing military service. In fact, Jalali previously served in the military without objection. Furthermore, there is no evidence that Jalali has " 'encountered difficulties due to [his] religious convictions' " that would buttress his claim. Id. at 725 (quoting UN Handbook on Procedures and Criteria for Determining Refugee Status p 172 (1979)). Thus, even if Jalali were threatened with imprisonment for refusing to serve in the military, we cannot infer that such punishment would necessarily be on account of his religious beliefs. See id. at 727 (inferring punishment on account of religious beliefs because Salvadoran conscription policy allows no exemption for religious reasons). Therefore, Jalali has failed to show a threat of persecution based on his alleged conscientious objection to military service. See Arteaga v. INS, 836 F.2d 1227, 1232 (9th Cir.1988) ("This court has rejected persecution claims based on the threat of conscription into a national army (as distinct from punishment for conscientious objection to military service)." (citations omitted)).
 
 
 12
 In addition, while Jalali is correct that a claim of persecution may be based on an imputed political opinion, Lazo-Majano v. INS, 813 F.2d 1432, 1435 (9th Cir.1987), he has failed to show that the Iranian government will likely accuse him falsely of holding certain political beliefs. See Rivas, 899 F.2d at 867 ("An alien makes out a case of likelihood of persecution on the basis of imputed political belief if she can establish that her alleged persecutor is likely to accuse her falsely of holding certain political beliefs ... and that her persecutor is likely to harm her on the basis of that accusation."). Although Jalali claims that he now disagrees with the religious and political views of the Iranian government, Jalali has never openly expressed his disagreement either in Iran, Italy, or the United States. Further, except for his former service as a palace guard, he has offered no evidence of any actions he has taken that would cause the government to attribute certain political or religious views to him. See De Valle v. INS, 901 F.2d 787, 791 (9th Cir.1990) (the petitioner must make an individualized showing of probable persecution). Thus, even though Jalali testified as to what might happen to him if he returns to Iran, he has failed to demonstrate that the government will act against him on account of his religious or political beliefs, whether real or imputed. Finally, Jalali's allegations of possible persecution because of his two-year stay in the United States do not support his claim for asylum. See Kaveh-Haghigy, 783 F.2d at 1323 (An allegation of persecution solely because of United States residency is "notably unspecific" and "cannot possibly justify asylum.").
 
 
 13
 The fact that Jalali has not shown evidence of actual harm or harassment on account of his political or religious beliefs is not dispositive of his asylum claim. Garcia-Ramos v. INS, 775 F.2d 1370, 1374 (9th Cir.1985). Nevertheless, Jalali has failed to provide the specific facts necessary to show that his fears of persecution are objectively reasonable. Rodriguez-Rivera, 848 F.2d at 1001-02. Jalali has presented no evidence that the Iranian government persecuted him before he left Iran.[2] Further, when asked if there were reasons for his fear of returning to Iran, Jalali said only that he did not believe in the government and that he just did not want to go back.
 
 
 14
 The record shows that Jalali's claim of persecution is based on nothing more than his desire to avoid conscription into the Iranian army. Therefore, we find under the circumstances of this case that substantial evidence supports the BIA's finding that Jalali failed to demonstrate a "well-founded fear" of persecution. See Arteaga, 836 F.2d at 1228 (petitioner qualifies for a discretionary grant of asylum if he demonstrates a "well-founded fear of persecution).[3]
 
 II
 
 15
 Jalali also contends that the BIA abused its discretion in refusing to take into consideration the summons and warrant issued for his arrest by the Iranian government. We disagree.
 
 
 16
 The BIA is an appellate tribunal authorized to hear appeals from decisions rendered by IJs in deportation cases. 8 C.F.R. Sec. 3.1(b)(2) (1989); Matter of Fedorenko, Interim Dec. No. 2963, at 23 (BIA April 17, 1984). Although acknowledging that Jalali had attached a copy of the summons and arrest warrant to his brief,[4] the BIA correctly noted that its review of the record on appeal is generally confined to the record developed before the IJ. Matter of Haim, Interim Dec. No. 3060, at 3 (BIA April 11, 1988); 8 U.S.C. Sec. 1252(b) (1988).
 
 
 17
 Jalali should have filed a motion to reopen or remand his deportation proceedings and explained the significance of the summons and arrest warrant to the BIA. Vides-Vides v. INS, 783 F.2d 1463, 1470 (9th Cir.1986). Jalali offers no reasons for his failure to file such a motion. Moreover, although the INS has not questioned the authenticity of those documents, Jalali did not attempt to demonstrate to the BIA that exceptional circumstances warranted consideration of the new evidence. See Matter of Godfrey, 13 I & N Dec. 790, 791 (BIA 1971). ("[I]n exceptional cases," the BIA will "receive and consider additional affidavits or other documents not previously available."). In the absence of any explanation as to their significance, we find that the BIA did not err in refusing to consider the summons and arrest warrant.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Terry J. Hatter, Jr., United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 1158(a) provides that the applicant for asylum must qualify as a refugee under 8 U.S.C. Sec. 1101(a)(42)(A). 8 U.S.C. Sec. 1158(a). The specified grounds are actually listed in section 1101(a)(42)(A)
 
 
 [2]
 Jalali described his experience in Iran between 1980 and 1984 as: "I just went to work and came home and that is it. I had nothing to do with the government". Administrative Record at 97. There is no evidence that during this time Jalali feared arrest. In fact, when questioned about whether he felt persecuted before he left Iran, Jalali stated only that the government deducted amounts of money from his and other persons' paychecks without explanation
 
 
 [3]
 Because Jalali failed to meet the more generous standard for asylum, he necessarily also failed to meet the standard for prohibition of deportation. See Diaz-Escobar v. INS, 782 F.2d 1488, 1491 (9th Cir.1986)
 
 
 [4]
 The BIA noted that Jalali's brief contained only a single sentence referring to those documents. Jalali stated: "There is even more cause now to grant asylu [sic] now that Mr. Jalali has a warrant issued for his arrest issued by the Central Revolutionary Islamic Court, true copy attached." Administrative Record at 27