34 F.3d 1071
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Zoltan BODO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70246.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 4, 1993.*
Decided Aug. 11, 1994.
 
 1
 Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 A Hungarian alien seeks review of a decision of the Board of Immigration Appeals affirming the immigration judge's denial of the alien's application for asylum, 8 U.S.C. Sec. 1158, and withholding of deportation, 8 U.S.C. Sec. 1253(h). The BIA entered a final order of deportation against the petitioner. We have jurisdiction to review the deportation order pursuant to section 106 of the Immigration and Nationality Act, 8 U.S.C. Sec. 1105(a). We deny the petition.
 
 BACKGROUND
 
 4
 The petitioner, Zoltan Bodo, entered the United States on July 3, 1987 as a nonimmigrant visitor for pleasure. He applied to the Immigration and Naturalization Service (INS) for political asylum on October 11, 1988. After his application was denied, Bodo was placed in deportation proceedings. He conceded deportability at a hearing before an immigration judge and applied for asylum under 8 U.S.C. Sec. 1158(a), and withholding of deportation under 8 U.S.C. Sec. 1253(h). The application was based on Bodo's belief that he would be persecuted due to his past affiliation with the anti-Soviet movement.
 
 
 5
 The immigration judge denied Bodo's application after taking administrative notice of recent political changes in Hungary, particularly the fall of the Communist government and the removal of troops of the former Soviet Union. Bodo appealed this ruling to the BIA and his appeal was dismissed.
 
 DISCUSSION
 
 6
 I. Denial of Asylum.
 
 
 7
 Section 208(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1158(a), provides that an alien is eligible for asylum if he meets the definition of refugee contained in 8 U.S.C. Sec. 1101(a)(42)(A). The latter provision defines a refugee as someone who cannot return to his home country because of a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." The "well-founded fear" standard has both a subjective and objective component. Cardoza-Fonseca, 480 U.S. at 430-31. The subjective component requires only that the alien's fear be genuine. Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1986). The objective component requires "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." Entrada-Posadas v. INS, 924 F.2d 916, 918 (9th Cir.1991) (internal citations omitted).
 
 
 8
 Relevant to the objective component of the well-founded fear determination are "conditions in the [alien's] country of origin, its laws, and the experiences of others." Hernandez-Ortiz v. INS, 777 F.2d 509 (9th Cir.1985). There has been considerable political change in Hungary since 1987. Recent years have witnessed a radical shift in Hungarian politics, with the fall of the Communist government and its replacement by a parliamentary democracy. Both the immigration judge and the BIA took administrative notice of this changed political context. Bodo contends that, notwithstanding any change, he fears persecution by former Communist Party officials who retain power in the Hungarian government.
 
 
 9
 Bodo claims that it was an abuse of discretion for the immigration judge to take administrative notice of the changed circumstances in Hungary. While he concedes that he knew administrative notice would be taken, he argues that the immigration judge improperly based his decision solely on the noticed circumstances.[1]
 
 
 10
 Bodo's deportation hearing was held on February 20, 1991, subsequent to democratic parliamentary elections conducted in Hungary in March and April of 1990 in which the former Communist Party (now the Hungarian Socialist Workers' Party) won less than 4% of the vote. Counsel for the INS questioned Bodo about the "new freedom in Hungary," and the immigration judge mentioned that the red star had been torn down from the main government building in Budapest, that a hero of the 1956 Hungarian Revolution against the Communists had recently been given a state funeral, and that Russian troops were in the process of leaving Hungary. Bodo responded that the same people were in power, although the names of the parties had changed.
 
 
 11
 In his opinion, the immigration judge took administrative notice of Hungary's "momentous political changes" that constituted a "radical shift in Hungarian politics toward democracy." Similarly, the BIA noticed the Hungarian election results and the dismantling of the former Hungarian government in favor of a western-style democracy. Both evaluated Bodo's specific allegations in light of these facts, determining that there was no objective basis for his claimed fear of persecution by former Communist authorities. This court has already accepted the use of administrative notice in immigration proceedings where, as is the case here, the aliens were afforded "ample opportunity" to argue that that their fear of persecution remained well-founded and to introduce evidence on the effect of the change of government. See Acewicz, 984 F.2d at 1060-61. Although the Tenth Circuit has issued the only published opinion on the use of administrative notice of changed conditions in Hungary, see Baka v. INS, 963 F.2d 1376 (10th Cir.1992), we have approved administrative notice of comparable political changes in Poland. See Acewicz, 984 F.2d at 1060, 1061. We find no abuse of discretion in the taking of administrative notice here.
 
 
 12
 Bodo advances no specific facts or corroborating reports in support of his conclusory statements regarding the possibility of persecution from former Communist Party officials who retain power in the Hungarian government. Accordingly, it cannot be said that the BIA's finding that he is not eligible for asylum was not supported by substantial evidence.[2]
 
 
 13
 Bodo also argues that he merits the grant of asylum on the grounds of past persecution. Past persecution alone, independent of a well-founded fear of future persecution, may suffice to establish eligibility for asylum on humanitarian grounds. Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988); Matter of Chen, Int.Dec. 3104 (BIA 1989).
 
 
 14
 While Bodo was incarcerated for thirty days, he was not physically abused or denied food. He was permitted to speak with his family and an attorney if he chose to do so. His means of livelihood was not threatened, nor was he forced to move. The treatment to which Bodo was subjected does not reach the level of persecution that would justify relief on humanitarian grounds. See Acewicz, 984 F.2d at 1062.
 
 
 15
 II. Denial of Withholding of Deportation.
 
 
 16
 To qualify for withholding of deportation under 8 U.S.C. Sec. 1253(h), the alien must demonstrate a "clear probability of persecution." Stevic, 467 U.S. at 413. Since this is stricter than the well-founded fear standard for asylum, an alien who cannot establish a well-founded fear is necessarily ineligible for withholding of deportation. Berroteran-Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir.1992). Thus, Bodo does not qualify for withholding of deportation.
 
 
 17
 IV. Challenge to the Adequacy of the Translation.
 
 
 18
 Bodo challenges the adequacy of the translation provided at his deportation hearing. In deportation proceedings, the accuracy and scope of the translation services must be sufficient to enable the applicant to "place his complete claim on the record." Augustin v. Sava, 735 F.2d 32, 38 (2nd Cir.1984). See also Ramirez v. INS, 550 F.2d 560, 565 n. 5 (9th Cir.1977) (the "alleged gaps in translation [are] insufficient to render the hearing unfair"); El Rescate Legal Services v. EOIR, 959 F.2d 742, 751 (9th Cir.1991) (upholding BIA policy of not requiring translation of entire deportation or exclusion proceeding).
 
 
 19
 The record here does not reveal translation problems sufficient to require a new hearing. In each example Bodo challenges, the interpreter merely needed further clarification or repetition. At no time did the interpreter appear unable to understand or translate a statement. Certainly, any defects in translation did not reach the level of those found in Augustin, 735 F.2d at 38, where the withdrawal of the alien's counsel and the denial of a continuance were not conveyed to him, so that "the accuracy and scope of the hearing translation [were] subject to grave doubt [and] appellant misunderstood the nature and finality of the proceedings."
 
 
 20
 Moreover, Bodo has failed to demonstrate that the alleged translation errors resulted in any actual prejudice. In order to make out a due process violation, Bodo would have to show that "a better translation would have made a difference in the outcome of the hearing." Acewicz, 984 F.2d at 1063. The record reveals that, at most, the translation contained some minor misunderstandings. It is clear, however, that the immigration judge accurately understood and summarized the nature and extent of Bodo's claims of persecution. Thus, Bodo fails to establish how the alleged errors in translation have affected the outcome of the proceedings.
 
 
 21
 The decision of the BIA is AFFIRMED and the petition for review is DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although Bodo repeatedly directs our attention to the immigration judge's opinion, that opinion received de novo review by the BIA, and thus it is the BIA decision that is controlling. Acewicz, 984 F.2d at 1059
 
 
 [2]
 Bodo has not asked us to take notice of events subsequent to the time of his hearing and we express no view as to whether any such events might contribute to a different result today. See, e.g., J. Perlez, Man in the News: Gyula Horn, Recycled Communist, To Lead Hungary, N.Y. Times, June 5, 1994, at A3; J. Perlez, Welcome Back, Lenin: As Capitalist Vagaries Rattle East Europe, Voters Reinstall Some Familiar Faces, N.Y. Times, May 31, 1994, at A1. Any such determination would in any event have to be made initially by the BIA