53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Jagmohan MALIK; Veena Malik, Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-70120.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 17, 1995.*
Decided April 24, 1995.
 
 Before: NORRIS, WIGGINS and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Jagmohan Malik and his wife, Veena, are Hindus from the state of Punjab, India.[1] They have five children who currently move around, living in both India and Berlin, Germany. On October 9, 1991, Malik entered the United States without inspection. At his deportation hearing, Malik admitted his deportability, but applied for asylum, withholding of deportation, and voluntary departure. He included his wife in his application; she has filed no separate application.
 
 
 3
 Malik testified that in June of 1990, three Sikh separatists visited him at his home in Punjab. He was a wealthy land broker, and they wanted a list of wealthy people who were interested in buying property. Apparently they wanted to approach those people in order to solicit funds for Kalistan, their proposed independent state. Malik told them that he would prepare such a list. When they returned a month later, he once again promised to prepare a list for them. They told him that they would return in a few days, and that there would be consequences if he failed to deliver the list at that time. Malik then went to the police for help. The police (Hindu and Sikh officers) refused to help unless he gave them a bribe, however, which he refused to do. Fearing for his safety, he left Punjab and moved to New Delhi, where his sister-in-law and brother live. One and a half months later, he and his wife moved to the United States.
 
 
 4
 The Immigration Judge ("IJ") found that there was no evidence that Malik could not relocate to New Delhi. He labeled Malik's fear of persecution in that city "conjectural and speculative." Accordingly, he denied the requests for asylum and withholding of deportation. Calling it a "borderline case," however, the IJ exercised his discretion to allow voluntary departure. Malik appealed the decision of the IJ to the Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of the IJ, finding: 1) that Petitioners had failed to make any allegations that they had suffered persecution, or faced future persecution, on account of one of the five factors enumerated in the Immigration and Nationality Act ("the Act"); 2) that general conditions of upheaval and unrest cannot serve as the basis for a persecution claim absent special circumstances; and 3) that Petitioners had not shown that any threat of persecution in India existed country-wide. The Maliks appeal. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a, and we affirm.
 
 DISCUSSION
 I. Asylum
 
 5
 a. Refugee Status
 
 
 6
 Under section 208(a) of the Act, the Attorney General has the discretion to grant asylum to "refugees." 8 U.S.C. Sec. 1158(a). Section 101(a)(42)(A) of the Act defines a refugee as one who is unable to return to his country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42)(A). We find that Malik has failed in his attempt to prove that he fears persecution "on account of" his political or religious beliefs, or beliefs imputed to him by the Sikhs. See INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992).
 
 
 7
 Even accepting as true all of Malik's testimony, it does not show that he has been singled out based on any of the five statutory grounds for refugee status. It is clear from the record that Malik was approached by the Sikh separatists not because of his religious or political beliefs, but simply because they wanted a list of wealthy individuals from whom they could request, or perhaps extort, donations. Malik admits that this is indeed the "superficial" construction of why he was singled out, but argues that in a "more fundamental sense" he was singled out because he was a Hindu. We do not find this argument persuasive.
 
 
 8
 First, the "superficial" reading of the evidence makes sense. If separatists need money for their cause, a wealthy land broker's list of wealthy clients would be a good starting point. Further, the Sikhs were consistent in their request. There is no evidence that the Sikhs wanted anything but the list, or that if given the list they nevertheless would have harmed Malik.
 
 
 9
 Second, on his application for asylum, Malik stated that the list the militants requested was one of wealthy Sikhs to whom they could turn. Thus, when he testified that he feared the people on the list may have been harmed if he had given their names to the Sikhs, Malik was admitting that the Sikh separatists may have intended to harm other Sikhs. This undercuts the crux of Malik's argument: that it would be "incongruous" for Sikh terrorists to harm Sikhs, but "consistent with their political agenda" to harm Hindus. Instead, it appears from his own testimony that the overriding concern of the Sikhs was one of money, not of religion.
 
 
 10
 Third, the fact that the Sikhs wanted the money in order to further their political cause does not mean that those they terrorized were persecuted "on account of" their politics. The facts in this case are closely analogous to those in Elias-Zacarias. In that case, the applicant for asylum had resisted a guerilla organization's efforts at recruiting him. The Supreme Court stated that resisting the efforts of the political group was not in itself the expression of a political opinion, and that the fact that the persecutors' motive in carrying out the kidnapping was political was "irrelevant." 502 U.S. at 481. The Court made clear that section 101(a)(42)(A) requires persecution on account of the victim's political opinion, not the persecutor's. Id. at 482.[2] In this case, Malik testified that he has no political opinion in the matter of an independent Sikh state, and there is no evidence that the Sikhs threatened him because they have falsely attributed a political opinion to him.
 
 
 11
 b. Settling in Other Parts of India
 
 
 12
 The BIA's denial of Malik's asylum application is also supported by evidence that Malik could peacefully live in parts of India other than Punjab. An alien is not eligible for asylum if he can go to another section of his country and not fear persecution. See Quintanilla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986); Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986). Malik argues that the burden is on the INS to prove that he can live peacefully in other parts of India, however, and that it has failed this burden. We disagree.
 
 
 13
 The language of Diaz-Escobar indicates that the burden is on the applicant, not the INS. 782 F.2d at 1493. Moreover, even if the burden is on the INS, the record more than adequately demonstrates that Malik does not reasonably fear persecution throughout India.
 
 
 14
 First, Malik admits that when he grew afraid, and left his hometown, he went to New Delhi and lived there safely for a month and a half. Second, both he and his wife have siblings still living in New Delhi. Third, the documentary evidence also indicates that Malik can live peacefully in most parts of India, where Hindus are in the majority. See, e.g., State Department Country Reports on Human Rights Practice for 1992 at 1135, and Letter from State Department to IJ (May 18, 1993) ("Many residents of the Punjab and surrounding areas, both Sikhs and Hindus, establish residences in other parts of India where they are able to pursue their lives without interference by the police or by Sikh nationalist organizations."). Lastly, when asked whether he agreed with the State Department's information stating that he could find safe places to live in India, Malik acknowledged that this is indeed the case: "Where we could have gone we didn't have a house. We didn't have relatives."
 
 
 15
 Against all of the evidence that Malik does not reasonably fear persecution in New Delhi, he forwards only the fact that his brother was murdered in New Delhi. We find this fact unpersuasive as evidence of the likelihood that Malik will be persecuted. It has been 26 years since his brother was murdered. Moreover, Malik does not know the reason that his brother was killed, or even if a Sikh was responsible. Indeed, from Malik's testimony, it appears that his brother was murdered in connection with either extortion or burglary; it does not appear that he was murdered for being a Hindu.
 
 II. Withholding of Deportation
 
 16
 An applicant only qualifies for a withholding of deportation if he shows a "clear probability of persecution" upon return to his country of origin. INS v. Stevic, 467 U.S. 407, 430 (1984); Acewicz, 984 F.2d at 1062. This is a more stringent standard than the "well-founded fear" standard required by section 208 for a grant of asylum. Acewicz, 984 F.2d at 1062. Because Petitioners cannot meet the lower standard of section 208, they necessarily fail to show a "clear probability" of persecution under section 243(h). See id.
 
 CONCLUSION
 
 17
 For the foregoing reasons, we AFFIRM the judgment of the BIA, and DISMISS this appeal.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Punjab is a state that is rife with ethnic struggles between Hindus and Sikh separatists, who want to form a separate Sikh nation called Kalistan. Although Hindus are the majority group in India as a whole, Sikhs comprise the largest religious group in Punjab
 
 
 [2]
 The Ninth Circuit has expressly held that Elias-Zacarias ' focus on the motive of the persecutor applies equally to religious persecution as well as political persecution. Canas-Segovia v. INS, 970 F.2d 599, 601 (1992)