86 F.3d 1162
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Santos Gabriel LARGAESPADA-GALO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70864.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 11, 1996.*
Decided May 21, 1996.
 
 Before: SNEED, NORRIS, and WIGGINS, Circuit Judges.
 
 MEMORANDUM**
 
 1
 Santos Gabriel Largaespada-Galo petitions for review of the decision of the Board of Immigration Appeals ("Board") denying his asylum application. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.
 
 I.
 FACTUAL & PROCEDURAL BACKGROUND
 
 2
 Largaespada-Galo is a 43-year-old native and citizen of Nicaragua. He entered the United States without inspection near Brownsville, Texas, on December 29, 1988, and was immediately apprehended. The Immigration & Naturalization Service ("INS") issued an Order to Show Cause charging him with deportability under section 241(a)(2) of the Immigration & Nationality Act, 8 U.S.C. § 1251(a)(2).[1] Largaespada-Galo conceded deportability as charged and, based on the following facts, applied for asylum, withholding of deportation, and in the alternative, voluntary departure in lieu of deportation.
 
 
 3
 Largaespada-Galo worked as an accountant for the Nicaraguan government from 1972 until late 1986 or early 1987. He was a Somoza supporter and a member of the liberal party's electoral board, for which he distributed leaflets. Largaespada-Galo's brother also worked for the Somoza government, as a guard at a cattle slaughterhouse. He was a Somozista "paramilitary" who was killed by the Sandinistas in 1979, about a year before the Sandinista revolution ousted the Somoza government.
 
 
 4
 After the revolution, in 1985, Largaespada-Galo joined an anti-Sandinista organization called El Grupo Nicarao. The group's purpose was to take food, medicine, and clothing to Contra guerrillas in northern Nicaragua. The group members, including five of Largaespada-Galo's former co-workers, used nicknames to hide their identities. One member of El Grupo Nicarao was killed, one was imprisoned, and two disappeared. Largaespada-Galo testified before the Immigration Judge ("IJ") that he feared "they would kill me just like [his fellow member] if they found out" that he was assisting the Contras. He was detained and questioned by State Security for three to four hours three times in a two-month period in 1988. He was told that if it could be proved he was taking medicine to the Contras, he would be jailed for ten years or killed just like his brother. Each time, he was released for lack of evidence to support the charges.
 
 
 5
 In 1987, Largaespada-Galo was fired from his government job because he refused to participate in Sandinista political activities. His food supply card was then taken away because he refused to cooperate with his neighborhood Sandinista Defense Committee ("CDS"). After he was fired, he secured employment as an accountant with a private German company, a job he held until he left Nicaragua.
 
 
 6
 Largaespada-Galo left Nicaragua by means of a passport first issued to him in 1985 and renewed in 1987 and 1988. He was issued an exit permit on November 9, 1988. Largaespada-Galo testified that he was allowed to leave despite his recent arrests because "[t]hey could not ask the courts for me to leave, since they couldn't prove anything against me they didn't stop my exit." Because he obtained his passport through an agency, he was not asked for the CDS letter usually required. His wife and four daughters remain in Nicaragua.
 
 
 7
 After Largaespada-Galo left Nicaragua, Sandinista representatives visited his house once looking for him, and his wife told them he was in the United States. He testified that despite the subsequent change in government in Nicaragua, the Sandinistas still "control the presidency, they have weapons." He fears returning "because the weapons are held by the Sandinistas and appear as the same as before; I would be killed. It is most possible that I would be killed."
 
 
 8
 The IJ found that Largaespada-Galo had failed to present sufficient evidence to support his claim of past persecution or a well-founded fear of future persecution, and denied his application for asylum. The IJ also denied his request for withholding of deportation, but granted voluntary departure. The Board affirmed. In his petition for review, Largaespada-Galo concedes that he does not meet the higher standard for withholding of deportation, and contests only the denial of asylum.
 
 II.
 DISCUSSION
 A. Legal Standards
 
 9
 Under section 208(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1158(a), the Attorney General has the discretion to grant political asylum to an alien whom the Attorney General determines to be a refugee within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). That section defines a refugee as:
 
 
 10
 any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]
 
 
 11
 An asylum application under section 208(a) is a two-step process: first, the applicant bears the burden of establishing his statutory eligibility; second, the Attorney General exercises her discretion in deciding whether asylum is warranted. Diaz-Escobar v. INS, 782 F.2d 1488, 1491 (9th Cir.1986).
 
 
 12
 Statutory eligibility may be based on either past persecution or a well-founded fear of future persecution. Singh v. Ilchert, 63 F.3d 1501, 1505 (9th Cir.1995). The well-founded fear standard contains both subjective and objective components. Id. at 1506. The subjective component requires that the applicant's fear of persecution be genuine. Id. "The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." Diaz-Escobar, 782 F.2d at 1492.
 
 
 13
 We review for substantial evidence the factual findings underlying the Board's determination whether an alien has proved persecution or a well-founded fear of persecution. Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). We may reverse the Board's determination only if the evidence is such that a reasonable factfinder would be compelled to "conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996) (en banc). The denial of asylum is reviewed for an abuse of discretion. Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995).
 
 B. Lack of Substantial Evidence
 
 14
 Largaespada-Galo contends that the record does not contain substantial evidence to support the Board's determination that he neither suffered past persecution nor possesses a well-founded fear of persecution.[2] He points specifically to his economic losses; the cumulative effects of the incidents he experienced; and what he describes as the Board's improper reliance on Matter of Chen, Int.Dec. 3104 (BIA 1989). We discuss these in turn.
 
 1. Economic Losses.[3]
 
 15
 An applicant may establish past persecution by showing that he was subjected to "deliberate imposition of substantial economic disadvantage" on account of his political opinion. Kovac v. INS, 407 F.2d 102, 107 (9th Cir.1969). "Mere economic detriment is not sufficient." Minwalla v. INS, 706 F.2d 831, 835 (8th Cir.1983).
 
 
 16
 In Ubau-Marenco v. INS, 67 F.3d 750 (9th Cir.1995), overruled on other grounds by Fisher, 79 F.3d at 963, a Nicaraguan doctor argued that he had suffered economic persecution because he had received undesirable work assignments on account of his political views; the Sandinista government had seized his parents' business vehicles without compensation; and the government had cut off the fabric supply to his wife's clothing factory. Noting other evidence that Ubau-Marenco still owned a pharmacy; that his parents still owned and operated a rice farm and sold rice to the government; and that fabric was in short supply throughout the country, the court upheld the Board's determination that he had not experienced substantial economic disadvantage. Id. at 755.
 
 
 17
 Here, Largaespada-Galo was not fired from his government job until 1987, seven years after the Sandinistas took power, and he had no trouble obtaining comparable private sector employment. Although his food ration card was taken away, there is no evidence that his was the only ration card in the family, or that he was then forced to buy food on the black market. A reasonable factfinder would not be compelled to conclude that these circumstances "rise to the level of economic persecution for political opinion." Id.
 
 
 18
 2. Evidence Cumulatively Considered.
 
 
 19
 Even considering the evidence cumulatively, substantial evidence supports the Board's decision.[4] The record indicates that after his brother was killed in 1979, Largaespada-Galo continued to live safely under the Sandinista regime, despite his prior involvement with the Somoza party. Despite the three arrests, he was able to renew his passport and obtain an exit visa. Although he was verbally threatened during the final arrest, he was released each time and was never harmed during questioning. The Board specifically considered these factors, along with the economic losses, and did not find them sufficient to support a finding of past persecution. This evidence was not enough to compel a reasonable factfinder to conclude that he was persecuted. See Elias-Zacarias, 502 U.S. at 481; Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995).
 
 3. The Application of Matter of Chen
 
 20
 The Board went on to hold that even if Largaespada-Galo had established past persecution based on economic factors or the cumulative evidence, a discretionary grant of asylum was not warranted based on Matter of Chen.[5]
 
 
 21
 In Matter of Chen, Int.Dec. 3104 at * 4 (BIA 1989), the Board held that a showing of past persecution creates a rebuttable presumption of persecution in the future. "The likelihood of present or future persecution then becomes relevant as to the exercise of discretion, and asylum may be denied as a matter of discretion if there is little likelihood of present persecution." Id.; see also Kazlauskas, 46 F.3d at 905-06 (likelihood of future persecution an important factor in discretionary determination following finding of past persecution). A showing of changed political conditions in the applicant's country can rebut the presumption of future persecution. Matter of Chen at * 4.
 
 
 22
 Further, a "favorable exercise of discretion [may be] warranted for humanitarian reasons even if there is little likelihood of future persecution." Id. at * 5. Humanitarian reasons include past subjection to "atrocious forms of persecution." Id. (internal quotation omitted); see also Kazlauskas, 46 F.3d at 906-07; Acewicz, 984 F.2d at 1062. The Board did exercise its discretion favorably for humanitarian reasons in Matter of Chen. There, Chen's father was a Christian minister in China during the Cultural Revolution, and the entire family had been systematically persecuted from the time Chen was eight years old. Id. at * 6-8.
 
 
 23
 News articles introduced into evidence by Largaespada-Galo discuss the election of President Violeta Chamorro and her anti-Sandinista coalition government in April 1990. The Board noted these articles and considered the evidence contained in them that the Sandinistas continue to wield influence and power in the police and the military. The Board also noted the absence of any evidence that the Sandinistas, since the change in government, have tried to harm individuals because of their opposition to, or their refusal to participate in, the Sandinista government in earlier years. The Board's conclusion that future persecution was unlikely was a proper basis for the discretionary denial of asylum.
 
 
 24
 Nor was it an abuse of discretion not to grant asylum for humanitarian reasons. Largaespada-Galo was briefly detained three times, lost his government job and ration card seven years after the Sandinista revolution, and lost a brother to the Sandinistas at the height of the war. These incidents do not amount to "atrocious forms of persecution" warranting a favorable exercise of discretion even had Largaespada-Galo shown past persecution. Cf. Matter of Chen at * 6-8.
 
 C. Abuse of Discretion
 
 25
 Largaespada-Galo contends that the Board abused its discretion because it did not discuss the evidence or indicate how it reached its conclusion. Although the Board's opinion was clearly based on the boilerplate language employed in cases involving anti-Sandinista Nicaraguans in the Chamorro era, the evidence in this case was clearly identified and discussed. Nor did the Board use administrative notice to bring in evidence outside the record. Cf. Castillo-Villagra v. INS, 972 F.2d 1017, 1022-23 (9th Cir.1992) (Board decision disapproved because based on administrative notice of the new government in Nicaragua). More than this was not required. As this court observed a decade ago, "[A]ll that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." Villanueva-Franco v. INS, 802 F.2d 327, 330 (9th Cir.1986).
 
 
 26
 The petition for review is DENIED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 That provision then read:
 (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who--
 * * *
 (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States[.]
 * * *
 8 U.S.C. § 1251(a)(2). That section has since been redesignated section 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B). Immigration Act of 1990, Pub.L. No. 101-649, § 602, 104 Stat. 4978, 5082.
 
 
 [2]
 He also argues that the Board applied an incorrect legal standard in determining what constitutes persecution. Persecution is not defined in the Act, but has been judicially defined as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." Fisher, 79 F.3d at 961 (internal quotations omitted). Whether the incidents in a given case amount to persecution is a factual, not a legal, determination. Ghaly, 58 F.3d at 1429; Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). There is nothing in the Board's discussion of the facts that reveals the application of an incorrect legal standard
 
 
 [3]
 The INS contends that we do not have jurisdiction to consider this argument because Largaespada-Galo failed to raise it before the Board. See Vargas v. INS, 831 F.2d 906, 907-08 (9th Cir.1987) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter."). Although Largaespada-Galo did not explicitly argue before the Board that he had suffered economic persecution, he repeatedly emphasized the economic harm he suffered. That is sufficient to place the issue before us
 
 
 [4]
 Again, Largaespada argues that the BIA committed a legal error in not finding past persecution on the basis of cumulative discrimination. He cites the Handbook on Procedures and Criteria for Determining Refugee Status, published by the Office of the United Nations High Commissioner for Refugees, for his contention that cumulative past discrimination can amount to past persecution. We treat the Handbook as authoritative and look to it for guidance in determining refugee status, but it does not have the force of law. United States v. Aguilar, 883 F.2d 662, 680 (9th Cir.1989), cert. denied, 498 U.S. 1046 (1991). Therefore, the Board did not commit a legal error by not specifically considering its provisions. See also Rezai v. INS, 62 F.3d 1286, 1289 (10th Cir.1995) (reviewing court need not examine the Board's reasoning process as long as its decision is supported by substantial evidence). Rather, this argument, like the economic persecution argument, goes to the question whether the Board's determination was supported by substantial evidence
 
 
 [5]
 Largaespada-Galo argues that this reliance was an abuse of discretion because Matter of Chen wrongly raises the burden of proof required to prove past persecution. However, this circuit and the Board have adopted the Chen reasoning. See Kazlauskas, 46 F.3d at 906-07; Acewicz, 984 F.2d at 1062. Therefore, the Board did not err in relying on it